Charles A. BANE, Plaintiff–Appellant,

v.

Richard G. FERGUSON, et al., Defendants–Appellees.

No. 89–1653.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1989.

Decided Nov. 20, 1989.

George N. Leighton argued, Neal & Associates, Chicago, Ill., Susan B. Magary, Wayzata, Minn., for plaintiff-appellant.

Richard G. Ferguson, Hinsdale, Ill., for Richard G. Ferguson.

Miriam F. Miquelon, Keck, Mahin & Cate, Harvey M. Silets argued, Locke E. Bowman, III, Silets & Martin, Michael A. Pope, Mark D. Blumberg, Phelan, Pope & John, Stanley L. Ferguson, Chicago, Ill., for defendant-appellee.

Before POSNER, COFFEY, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

The question presented by this appeal from the dismissal of the complaint (see 707 F.Supp. 988 (N.D.Ill.1989)) is whether a retired partner in a law firm has either a common law or a statutory claim against the firm's managing council for acts of negligence that, by causing the firm to dissolve, terminate his retirement benefits. It is a diversity case governed by the law of Illinois, rather than a federal-question case governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*, because ERISA excludes partners from its protections. See 29 C.F.R. § 2510.3–3(c)(2).

Charles Bane practiced corporate and public utility law as a partner in the venerable Chicago law firm of Isham, Lincoln & Beale, founded more than a century ago by Abraham Lincoln's son Robert Todd Lincoln. In August 1985 the firm adopted a noncontributory retirement plan that entitled every retiring partner to a pension, the amount depending on his earnings from the firm on the eve of retirement. The plan instrument provided that the plan, and the payments under it, would end when and if the firm dissolved without a successor entity, and also that the amount paid out in pension benefits each year could not exceed five percent of the firm's net income in the preceding year. Four months after the plan was adopted, the plaintiff retired, moved to Florida with his wife, and began drawing his pension (to continue until his wife's death if he died first) of $27,483 a year. Bane was 72 years old when he retired. So far as appears, he had, apart from social security, no significant source of income other than the pension.

Several months after Bane's retirement, Isham, Lincoln & Beale merged with Reuben & Proctor, another large and successful Chicago firm. The merger proved to be a disaster, and the merged firm was dissolved in April 1988 without a successor—whereupon the payment of pension benefits to Bane ceased and he brought this suit. The suit alleges that the defendants were the members of the firm's managing council in the period leading up to the dissolution and that they acted unreasonably in deciding to merge the firm with Reuben & Proctor, in purchasing computers and other office equipment, and in leaving the firm for greener pastures shortly before its dissolution. The suit does not allege that the defendants committed fraud, engaged in self-dealing, or deliberately sought to destroy or damage the law firm or harm the plaintiff; the charge is negligent mismanagement, not deliberate wrongdoing. The suit seeks damages, presumably the present value of the pension benefits to which the Banes would be entitled had the firm not dissolved.

Bane argues incorrectly that on a motion to dismiss for failure to state a claim the court should resolve unclear questions of law, as well as of fact, in favor of the plaintiff. What is correct is that for purposes of determining whether the complaint states a claim, the facts alleged, plus reasonable inferences therefrom, are taken as true, and the question is then whether on those assumptions the plaintiff would have a right to legal relief. See, e.g., *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985).

Bane has four theories of liability. The first is that the defendants, by committing acts of mismanagement that resulted in the dissolution of the firm, violated the Uniform Partnership Act, Ill.Rev.Stat. ch. 106½, ¶ 9(3)(c), which provides that "unless authorized by the other partners ... one or more but less than all the partners have no authority to: Do any ... act which would make it impossible to carry on the ordinary business of the partnership." This provision is inapplicable. Its purpose is not to make negligent partners liable to persons with whom the partnership transacts (such as Bane), but to limit the liability of the other partners for the unauthorized act of one partner. See *Hackney v. Johnson,* 601 S.W.2d 523, 525 (Tex.Civ.App.1980). The purpose in other words is to protect partners. Bane ceased to be a partner when he retired in 1985.

Nor can Bane obtain legal relief on the theory that the defendants violated a fiduciary duty to him; they had none. A partner is a fiduciary of his partners, but not of his former partners, for the withdrawal of a partner terminates the partnership as to him. *Adams v. Jarvis,* 23 Wis.2d 453, 458, 127 N.W.2d 400, 403 (1964). Bane must look elsewhere for the grounds of a fiduciary obligation running from his former partners to himself. The pension plan did not establish a trust, and even if, notwithstanding the absence of one, the plan's managers were fiduciaries of its beneficiaries (there are myriad sources of fiduciary duty besides a trust), the mismanagement was not of the plan but of the firm. There is no suggestion that the defendants

failed to inform the plaintiff of his rights under the plan or miscalculated his benefits or mismanaged or misapplied funds set aside for the plan's beneficiaries; no funds *were* set aside for them. Even if the defendants were fiduciaries of the plaintiff, moreover, the business-judgment rule would shield them from liability for mere negligence in the operation of the firm, just as it would shield a corporation's directors and officers, who are fiduciaries of the shareholders. See *Cottle v. Hilton Hotels Corp.*, 635 F.Supp. 1094, 1099 (N.D.Ill. 1986).

■■ That leaves for discussion Bane's claims of breach of contract and of tort. The plan instrument expressly decrees the death of the plan upon the dissolution of the firm, and nowhere is there expressed a commitment or even an undertaking to maintain the firm in existence, whether for the sake of the plan's beneficiaries or anyone else. Contracts have implicit as well as explicit terms, see, e.g., *Foster Enterprises, Inc. v. Germania Federal Savings & Loan Ass'n*, 97 Ill.App.3d 22, 28, 52 Ill.Dec. 303, 308, 421 N.E.2d 1375, 1380 (1981); *Wood v. Duff–Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917) (Cardozo, J.), and one can imagine an argument that the plaintiff was induced to retire by an implied promise that the managing council would do everything possible to keep the firm going—that without such an implied promise he would not have retired, given his dependence on the firm's retirement plan for his income after he retired. But Bane does not make this argument and anyway it is hopeless. The plan required partners to retire by age 72, an age Bane had already reached when the plan was adopted. Were there no such requirement the question would be whether, by the creation of the retirement plan, the partnership impliedly undertook to insure the retired partners, out of the *personal* assets of the members of the managing council, against any cessation of retirement benefits that was due to mismanagement by the council which contributed to the demise of the firm. To state the question is to answer it. See *Cowles v. Morris & Co.*, 330 Ill. 11, 161 N.E. 150 (1928).

■ The last question, which is the most interesting because the most fundamental, is whether the defendants violated a duty of care to the plaintiff founded on general principles of tort law. What is the liability of the managers of a failed enterprise to persons harmed by the failure? When a large firm—whether a law firm, or a manufacturing enterprise, or a bank, or a railroad—fails, and shuts its doors, many persons besides the owners of the firm may be hurt in their pocketbooks—workers, suppliers, suppliers' workers, creditors (like Mr. Bane), and members of these persons' families. The collapse of Isham, Lincoln & Beale calls to mind Rosencrantz's metaphor of the "massy wheel/ Fixed on the summit of the highest mount,/ To whose huge spokes ten thousand lesser things/ Are mortised and adjoined, which when it falls/ Each small annexment, petty consequence,/ Attends the boisterous ruin." (*Hamlet*, Act III, sc. 3.) We can find no precedent in Illinois law or elsewhere for imposing tort liability on careless managers for the financial consequences of the collapse of the firm to all who are hurt by that collapse. "The act of dissolution of a corporation is not in itself sufficient foundation for [a] tort action even if it results in the breach of contracts. If the dissolution is motivated by good faith judgment for the benefit of the corporation rather than personal gain of the officers, directors or shareholders, no liability attaches to the dissolution." *Swager v. Couri*, 60 Ill. App.3d 192, 196, 17 Ill.Dec. 457, 460, 376 N.E.2d 456, 459 (1978) (citations omitted). The competence, not the good faith, of the defendants is drawn in question by the complaint. And the principle of *Swager* is as applicable to a partnership as to a corporation.

There are a number of reasons for the principle. The dissolution of a firm is a loss to some but a gain to others—competitors and their employees, suppliers, and other dependents. Unless the gainers can be forced to disgorge their gains—and they cannot—full liability to the losers will result in overdeterrence. In addition, potential victims of a firm's dissolution can protect themselves through contract, and

therefore do not need the protection of tort law; people should be encouraged to protect themselves through voluntary transactions rather than to look to tort law to repair the consequences of their improvidence. Finally, so massive and uncertain a contingent liability would be difficult to quantify, and hence difficult and costly to insure against, and as a result it might curtail risk-taking and entrepreneurship. Concretely, the threat of such liability in the present case might have deterred any partner from accepting election to the managing council of Isham, Lincoln & Beale and might have deterred the firm from establishing the retirement plan at all—the benefits of which were then so cruelly, but not maliciously, cut off.

We are sorry about the financial blow to the Banes but we agree with the district judge that there is no remedy under the law of Illinois.

AFFIRMED.