**Jerry R. SUMMERS, Scott R. Lewis, and Laurie Stanton, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**STATE STREET BANK AND TRUST COMPANY; the UAL Corporation Employee Stock Ownership Plan and the UAL Corporation Supplemental Employee Stock Ownership Plan, Defendants.**

No. 95 C 2271.

United States District Court, N.D. Illinois, Eastern Division.

March 29, 1996.

Michael Jerry Freed, Michael B. Hyman, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, IL, Steve W. Berman, Clyde A. Platt, Hagens & Berman, Seattle, WA, Kevin P. McBride, Salt Lake City, UT, for plaintiffs.

Susan Getzendanner, Charles F. Smith, Jr., John Kevin Lyons, Pauline H. Yoo, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

In July, 1994 United Airlines (UAL Corporation, "United" or "UAL") became a majority employee owned company. Plaintiffs, two pilots and a mechanic, have brought this class action on behalf of all participants in the UAL Stock Ownership Plan ("UAL ESOP"), the UAL Corporation Supplemental Employee Stock Ownership Plan ("UAL

Supplemental ESOP") (together the "ESOP"), and the trusts created in connection with the formation of the Plans, alleging that the ERISA fiduciary, State Street Bank and Trust Company, violated its fiduciary duties under ERISA in connection with the purchase of the UAL stock by the ESOP. Defendants [1] have moved to dismiss the complaint. For the reasons stated in this opinion, the motions to dismiss are granted.

According to the complaint, the background to the 1994 recapitalization included labor turmoil at United and diminished profits due to various factors, including higher operating costs, consumer demand for lower fares, and a poor economy. In 1993, United announced numerous proposals to reduce costs and requested concessions from its unions. In July, 1993, a coalition composed of the Airline Pilots Association ("ALPA"), the International Association of Machinists and Aerospace Workers ("IAM"), and the Association of Flight Attendants ("AFA") (the "Coalition") informed United that it was interested in participating in a cooperative restructuring that would include employee investment and a majority employee ownership of the company. After extensive negotiations and proposals, an agreement was signed on March 25, 1994, entitled the Amended and Restated Agreement and Plan of Recapitalization ("Recapitalization Agreement"). Under the Recapitalization Agreement, United would transfer between 53 and 63 percent of the equity in the company to a trust (the ESOP) in exchange for cash and a note payable by the trust. The shares were to be allocated to employees (the trust beneficiaries) as the note was repaid. The beneficiaries would receive their stock when their employment terminated. The consideration for this transfer included substantial wage and benefit reductions and work rule changes.

State Street was not a party to the Recapitalization Agreement. However, also on March 25, 1994, State Street, retained by United as the ESOP trustee, and United executed a Preferred Stock Purchase Agree-

---

**1.** Plaintiffs also named the Employee Stock Ownership Plan ("ESOP") and Supplemental Employee Stock Ownership Plan ("SESOP") as de-

fendants. Their allegations are solely against the trustee, however.

ment (the "Purchase Agreement"). This agreement provided that State Street, as trustee, would purchase 12,400,000 Class 1 Preferred Shares. State Street's obligation to buy the stock was subject to several conditions which form the basis for this suit.

In June, 1994, the agreement between the Coalition and United was altered as a result of the fact that United's stock was selling below the floor price set for the sale. The new floor price was set at a lower figure. Furthermore, the purchase was now to take place in seven installments. The first installment was to include 1,899,059 shares of newly issued UAL stock at a price of 138 percent of the trading place of UAL's new stock on the closing date with the 38 percent increase over the trading price representing a "control" premium. The amended agreement left the purchase price for the remaining sales to be negotiated in good faith between UAL and the trustee. In addition, the percentage ownership purchased by the UAL ESOP and Supplemental ESOP [2] was increased from 53 to 55 percent of the company. Closing of the first installment together with the recapitalization took place in July, 1994.

In their complaint, plaintiffs allege that when employee labor concessions in terms of wages and benefits are considered, the real price of the stock purchased by the trustee was approximately $198 per share. They say at the time of closing the stock was selling on the New York Stock Exchange at $88 a share, and that even with a 38 percent increase for a sale of control premium, the trustee paid far in excess of the value of the stock. Plaintiffs say the trustee abdicated its fiduciary responsibility under ERISA and applicable ESOP documents to determine that the price paid was fair, in violation of various sections of ERISA, including 29 U.S.C. sec. 1104(a)(1), 1106(a)(1)(A) and 1108(e). On this motion, defendants principally argue that State Street as trustee had no obligation under the language of the documents or ERISA to consider employee con-

cessions and that since plaintiffs do not argue that the price paid ($121.44 per share) without consideration of concessions was unfair,[3] State Street did not violate ERISA as a matter of law.

In considering defendants' motion to dismiss, I must, of course, evaluate plaintiffs' complaint under the well known principle that all facts alleged and inferences reasonably to be drawn from those facts must be accepted as true. *E.g., Bane v. Ferguson,* 890 F.2d 11 (7th Cir.1989).

An ESOP is a "welfare benefit plan" under ERISA. State Street, as the trustee of the ESOP, is bound by the fiduciary duties imposed by ERISA in 29 U.S.C. § 1104(a)(1). Section 1104(a)(1)(D) requires State Street to discharge its duties regarding the ESOP "in accordance with the documents and instruments governing the plan."

The ESOP specifies that the Trust document comprises part of the "Plan." Pls.' Ex. G, ESOP Sec. 1(11). The Trust Agreement states:

> 3.8 Notwithstanding any other provisions of this Agreement or the Plan, the purchase of Qualifying Employer Securities pursuant to the ESOP Preferred Stock Purchase Agreement dated March 25, 1994, as amended, ... among the Trustee and the Company shall be effected by the Trustee ... in the exercise of its reasonable judgment ... that such transaction is in the best interests of the Participants and that the purchase transaction and the terms and conditions of any Acquisition Loan entered into in connection with the above-described Purchase Agreement are in compliance with all applicable provisions of the Code and ERISA.

Pls.' Ex. F. The parties agree (see, e.g., Defendants' Memorandum at 7–8) that the Purchase Agreement further defined the Trustee's responsibilities. *See also, Board of Trustees of the Watsonville Frozen Food Welfare Trust Fund v. California Coopera-*

---

**2.** Employees participating in the Supplemental ESOP are generally management and salaried employees with annual compensation in excess of $150,000.

**3.** In their memorandum in opposition to defendants' motion to dismiss, plaintiffs say that their complaint does challenge the fairness of the actual price paid. (Plaintiffs' Response, p. 2, n. 1) A fair reading of the complaint does not support this proposition.

*tive Creamery,* 877 F.2d 1415, 1420 n. 2 (9th Cir.1989).

State Street says that the Purchase Agreement conditioned its purchase of the stock on its determination that the purchase was not a prohibited transaction under ERISA, that it receive an opinion from its independent financial advisor that the purchase price did not exceed the stock's fair market value, and that the purchase was prudent and in the best interests of participants.

Plaintiffs say State Street's duties went further, and required it specifically to determine the value of the employee concessions made by United employees and to include these concessions in valuing the stock to be purchased by the ESOP. Plaintiffs base this argument on language in the Purchase Agreement that states:

> The Trustee shall have made a good faith determination that the purchase of the Shares contemplated hereunder and the consummation of all other transactions contemplated by the Agreement[4] are prudent and in the best interests of the Plan participants.

Defs.' Ex. C, Sec. 5.1(j), p. 19.[5]

State Street responds that the phrase "all other transactions contemplated by the Agreement" means "the transfer of shares from UAL to State Street, State Street's payment of cash for the shares' par value, and State Street's execution of a note for the remaining purchase price." Reply Brf., p. 9 n. 10. However, the word "and" separating "purchase of the Shares contemplated hereunder" and "all other transactions contemplated by the Agreement" indicates that the obligation in the second phrase is in addition to the obligation described in the first phrase. The fact that the word "other" modifies "transactions" also shows that the trans-

actions referred to are different from the purchase of the shares of stock.

Other language in the Purchase Agreement gives credence to the plaintiffs' argument that the documents contemplated that the trustee's evaluation of the stock purchase included consideration of the Recapitalization Agreement. The Purchase Agreement described the recapitalization, which UAL and the unions entered into simultaneously with the execution of the Purchase Agreement, as providing:

> UAL's salaried and management employees and employees represented by participating unions through a leveraged Employee Stock Ownership Plan (ESOP), a nonleveraged ESOP and one or more nonqualified trusts will acquire securities representing initially 53%[6] of the common equity interest and voting power of UAL and in connection therewith certain wage concessions and collective bargaining agreement modifications will be made (the foregoing reorganization, as more fully described in the Recapitalization Agreement, shall hereinafter be referred to as the "Transaction")

Pls.' Ex. B., pp. 1–2. At another point in the Purchase Agreement, State Street represented and warranted that it had received a "preliminary opinion of ... [its] financial advisor ... to the effect that ... (ii) the Transaction is fair to the Plan from a financial point of view." Pls.' Ex. D, § 4.8, p. 17. UAL represented and warranted that it delivered to State Street "a true and correct copy of the Recapitalization Agreement ... and all other material documents relating to the Transaction." Pls.' Ex. D, § 3.16, p. 14.

Defendants argue that the fact that "transactions" is not capitalized, in contrast to the defined term "Transaction" shows that the

---

**4.** "Agreement" is defined as "the Preferred Stock Purchase Agreement dated as of March 25, 1994." Defs.' Ex. C, p. 1.

**5.** The fact that this provision was in the section of the Purchase Agreement labeled "conditions" rather than "covenants" has no effect as the failure to perform a condition may be a breach of contract. *LaSalle National Bank v. Metropolitan Life Insurance Company,* 18 F.3d 1371, 1374 (7th Cir.1994); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 225(3) cmt. d (1981) ("The same term

may, however, be interpreted not only to make an event a condition of the obligor's duty, but also to impose a duty on the obligee that it occur.") Moreover, to the extent § 5.1(j) was only a condition, the defendants do not argue that the plaintiffs waived it.

**6.** As noted, this was later amended to provide that securities representing 55 percent ownership of UAL would be acquired.

Recapitalization Transaction was not to be considered. But the more logical interpretation is that "transactions" was intended to be broader than "Transaction." There is no basis for assuming from the language of the Purchase Agreement that "transactions contemplated in this agreement" would exclude the central "Transaction."

Although I agree with plaintiffs that the language of the documents required the trustee to examine the Recapitalization Agreement, I do not agree with their further conclusion that the trustee had to include the economic value of those concessions in determining the price to be paid by the ESOP for the stock. Essentially plaintiffs complain that United employees, as employees, have given up more in wage and benefit concessions than they are likely to receive in increased value in the stock they receive through the ESOP. But while, if that is true, it is an economic harm, it is not an economic harm to the Plan. The only issue facing Plan participants, as participants, is whether their stock is worth the value given in payment by the ESOP and its long-term value. The former is not challenged and the latter is dependent on the long-term economic viability of United. In that sense, the wage and other concessions made by United employees presumably benefit the company as a whole and, consequently, the Plan.

This interpretation of the trustee's obligations under the documents in question is required by ERISA's requirement that the trustee act for the "exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A). Department of Labor interpretations of ERISA's requirements provide that a trustee determine

what is in the economic best interest of a plan's participants and beneficiaries, in their capacity as participants and beneficiaries of the plan. Therefore, such decisions must be based on what is in the

economic interest of the pension plan, recognizing that the pension trust is a separate legal entity designed to provide retirement income.

Defs.' Ex. D.[7]

While State Street could not under ERISA and applicable DOL interpretations consider the economic interests of participants as employees, it was undoubtedly obligated, under the Plan documents and ERISA, to consider the entire recapitalization in terms of its own assessment of the stock purchase under which it was to become the largest shareholder in United. The language in the Purchase Agreement referred to by plaintiffs is consistent with this obligation. Since there is no claim that State Street failed in this obligation or that the stock is worth less than the actual price paid, plaintiffs' complaint must be dismissed.[8]

---

7. Other DOL pronouncements cited by the defendants also counsel that a fiduciary should judge the propriety of an investment based on its economic value to the plan. *See e.g.* Information Letter to the Annuity Fund of the Electrical Industry of Long Island (March 15, 1982), Defs.'

Ex. E; Advisory Opinion 81–12A (January 15, 1981), Defs.' Ex. E.

8. Defendants have raised additional arguments. Since they are not essential to the disposition of their motions, they will not be addressed.