Mike A. ABDALLA, Basim A. Abdalla, WB Realty, LLC, Q Realty Group, Inc., Greentree Real Estate, LLC, Sawmill Realty, LLC, Hickory Place Realty, LLC and Maple Leaf Realty, LLC, Appellants–Defendants,

v.

Raed I. QADORH–ZIDAN and Hani I. Qadorh–Zidan, Appellees–Plaintiffs.

No. 49A04–0812–CV–707.

Court of Appeals of Indiana.

Sept. 10, 2009.

James L. Peterson, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellants.

David K. Herzog, Ryan M. Hurley, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants–Defendants, Mike A. Abdalla, Basim M. Abdalla, WB Realty, LLC, Q Realty Group, Inc., Greentree Real Estate, LLC, Sawmill Realty, LLC, Hickory Place Realty, LLC, and Maple Leaf Realty, LLC (collectively, the Abdallas), appeal the trial court's Order denying their Motion for Summary Judgment on the Appellees–Plaintiffs', Raed I. Qadorh–Zidan and Hani I. Qaddoura Zidan (collectively, the Zidans), Complaint for breach of fiduciary duty, negligence, and for declaratory relief to inspect the books and records of the LLCs and Q Realty (collectively, the companies).

We affirm.

## ISSUES

The Abdallas raise three issues on appeal, which we restate as:

(1) Whether the companies owed the former members of an LLC and former shareholders of a corporation fiduciary duties regarding the preparation of tax documents covering the period before the separation but drawn up after the separation of the shareholders and members from the companies;

(2) Whether the former members of an LLC and former shareholders of a corporation have a right to inspect company books and records to evaluate tax documents drawn up by the companies after the separation but covering actions before the members and shareholders separated from the companies; and

(3) Whether the trial court properly denied the Abdallas' motion for summary judgment on the Zidans' negligence claim.

## FACTS AND PROCEDURAL HISTORY

In 2003 and 2004, the Abdallas and Zidans formed six new companies to own, operate, and manage apartment properties. Specifically, they were members of Greentree Real Estate, LLC, Sawmill Realty, LLC, WB Realty, LLC, Maple Leaf Realty, LLC, and Hickory Place Realty, LLC. Each family owned a fifty percent interest in the LLCs. The Abdallas and Zidans were also the sole directors and shareholders of Q Realty Group, Inc.

After the formation of the companies, Raed Zidan served as Manager and as "Tax Matters Person" of the LLCs and as President of Q Realty. (Appellants' App. p. 272). In those roles, Raed Zidan engaged Douglas Latham (Latham) to serve as accountant for the companies. Latham became familiar with the finances of the companies, including their collection patterns, bad debts, and expense allocations. He prepared the tax returns for WB Realty, LLC and Q Realty in 2003 and for the companies in 2004 and 2005, including the K–1 Schedules reflecting each member's or shareholder's share of income, deductions, and credits that each member or shareholder was required to include in his individual tax return.

In June of 2005, the Abdallas filed a Complaint against the Zidans, alleging breach of fiduciary duty and usurpation of corporate opportunities. On August 4, 2006, pursuant to a confidential settlement agreement, the Zidans sold their membership interests in the LLCs and their shares in Q Realty to the Abdallas. In the Fall of 2007, Raed Zidan received tax returns, including K–1 Schedules, for the companies for the year which ended August 4, 2006. The tax returns address the time period during which the Zidans were members of the LLCs and shareholders of Q Realty and were prepared by Daniel O'Leary (O'Leary), the accountant engaged by the Abdallas.

Upon receiving the K–1 Schedules, the Zidans requested Latham to analyze the documents to determine whether they accurately reflected the Zidans' shares of income, deductions, and credits in the companies. Because the K–1 Schedules include information that the Zidans are required to incorporate into their own personal tax returns, the Zidans wanted to be certain the information was accurate. Alleging discrepancies in the K–1 Schedules, the Zidans repeatedly asked to see the companies' books. This requested information—all of which covered the period when the Zidans were 50% owners of the companies—included the trial balances; year-to-date income statements; rent rolls for July and August 2006; balance sheets; detail ledgers for certain account balances;

bank statements and reconciliations; mortgage statements for July and August 2006; and general ledger details. The Abdallas refused.

On January 3, 2008, the Zidans filed a Complaint claiming breach of fiduciary duty, negligence, and seeking declaratory relief to inspect the books and records of the LLCs and Q Realty for the period the Zidans were members of the LLCs and shareholders of Q Realty for the purpose of verifying the accuracy of the K–1 Schedules. Shortly after filing the Complaint, the Zidans sought discovery from the Abdallas. Their discovery request sought identification of the information made available to the persons who prepared the K–1 Schedules and all documents upon which the K–1 Schedules are based.

On February 25, 2008, the Abdallas filed a motion for summary judgment arguing that they did not owe the Zidans any duties in connection with their preparation of the tax data and that the Zidans are not entitled to inspect the companies' books. In support of their motion, the Abdallas designated the affidavit of Mike Abdalla. This affidavit included the following sworn statements:

17. In order to prepare the Companies' tax returns and K–1s for the year ending August 4, 2006, I provided [O'Leary] with all of the necessary financial records and documents for the LLCs and Q Realty. After reviewing and analyzing the companies' financial records, [O'Leary] provided tax advice and recommendations on the tax treatment of the income, profits and losses of the LLCs and Q Realty.

18. After his review of the financial records, [O'Leary] prepared the LLCs and Q Realty's tax returns and K–1s in accordance with his recommendations.

19. As a result, the Zidans and the Abdallas were assessed with taxable gains and profits, in accordance with each members' interest in the LLCs and Q Realty, on their respective K–1 Schedules for the tax year ending August 4, 2006.

(Appellants' App. p. 72). Although Trial Rule 56(E) requires that "[s]worn or certified copies not previously self-authenticated or all papers or parts thereof referred to in an affidavit shall be attached therewith," Mike Abdalla did not attach any documents to his affidavit to support his assertions. In addition to the motion for summary judgment, the Abdallas also filed a motion for a protective order so that they would not have to produce the financial records alluded to in the affidavit. Opposing the motion, the Zidans argued that they were entitled to discovery relevant to matters raised in the Abdallas' motion for summary judgment. After a hearing, the trial court granted the Abdallas' motion for protective order "pending the trial court's ruling on [the Abdallas'] motion for summary judgment." (Appellees' App. p. 26).

Before responding to the Abdallas' motion for summary judgment, the Zidans served a notice of deposition of Mike Abdalla and a subpoena for the deposition of O'Leary. In response to the deposition requests, the Abdallas refused the deposition as they considered this an attempt by the Zidans to discover the information which was the subject of the trial court's protective order in a different way. The Abdallas filed a motion to quash the deposition notices and the Zidans, in turn, filed a motion to compel the depositions. On May 29, 2008, the trial court granted the Abdallas' motion to quash and on June 26, 2008, the trial court denied the Zidans' motion to compel deposition testimony.

On September 18, 2008, after hearing oral argument, the trial court summarily denied the Abdallas' motion. Upon request, the trial court certified the case for interlocutory appeal and we accepted jurisdiction pursuant to Indiana Appellate Rule 14(B).

The Abdallas now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Hendricks County Bd. of Comm'rs v. Rieth–Riley Constr. Co., Inc.*, 868 N.E.2d 844, 848–49 (Ind.Ct.App.2007). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 849. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.*

We observe that, in the present case, the trial court summarily denied the Abdallas' motion for summary judgment. While special findings are not required in summary judgment proceedings and are not binding on appeal, they offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct.App.2004).

### II. *Fiduciary Duty*

The parties' main argument focuses on whether a fiduciary duty exists between the companies and the former members of the LLCs and former shareholders of the corporation. The Abdallas contend that by virtue of the language included in the companies' operating agreements the fiduciary relationship with the Zidans ended on August 4, 2006. Specifically, these operating agreements provide that a member who assigns all of his interest in the LLCs "shall no longer have any rights or privileges of a Member ..." (Appellants' App. p. 82). In addition, both in the settlement agreement and in the amendments to the operating agreements, the Zidans acknowledged that they were relinquishing "all" of their "rights, title and interest" as members and shareholders of each of the six companies. (Appellants' App p. 94). The Abdallas assert that because the Zidans failed to take advantage of negotiating a special provision "for the allocation of items of income, profit, gain, loss, deduction or credit" in the year in which they transferred their interest, the Zidans cannot now be heard to complain. The Abdallas continue their argument that, even regardless of this contractual language, the Zidans fiduciary relationship with the companies terminated in August of 2006 and in the absence of a dissolution of the companies, there is no winding-up phase which could continue the existence of the fiduciary duties.

On the other hand, the Zidans maintain that while fiduciary duties generally terminate when a member of a LLC or a shareholder of a close corporation transfers his interest in the entity, fiduciary duties remain intact with respect to the resolution of pre-separation business. In essence, they claim that because the tax return addresses the period during which they were members of the LLCs and shareholders of Q Realty, the fiduciary relationship covered the preparation of the tax return

which was completed after the Zidans' involvement in the companies ended.

Limited liability companies, such as the ones at issue here, were not available in Indiana until the enactment of Indiana's Business Flexibility Act in 1993. Ind.Code § 23–18–1–1 *et seq.* The popularity of LLCs has forced courts nationwide to address traditional business issues in terms of this statutory creation. In Indiana, there is little case law regarding LLCs and hardly any case law concerning fiduciary duties in the LLC context. In light of this limitation, we decided in *Purcell v. Southern Hills Investments, LLC,* 847 N.E.2d 991, 997 (Ind.Ct.App.2006), that "common law fiduciary duties, similar to the ones imposed on partnerships and closely-held corporations, are applicable to Indiana LLCs."

■ Shareholders in a closely-held corporation, such as Q Realty, owe each other fiduciary duties. *G & N Aircraft, Inc. v. Boehm,* 743 N.E.2d 227, 240 (Ind.2001). In such a corporation, "[t]he fiduciary must deal fairly, honestly, and openly with his corporation and fellow stockholders. He must not be distracted from the performance of his official duties by personal interests." *Id.*

Analyzing both parties' respective arguments, we note that the parties approach the same issue from different angles. Whereas the Abdallas focus on the statutory provisions and language included in the operating agreements; the Zidans primary argument relies on out-of-state case law. However, regardless of the approach taken, it is clear that the parties present this court with an issue of first impression in this jurisdiction, namely, whether a company owes a continuing fiduciary duty to a former shareholder or member to fairly and accurately report the company's financial results to the IRS for a year in which the former shareholder held stock in the corporation or was a member of the LLC.

With regard to the assignment of membership in an LLC, Indiana Code section 23–18–6–4.1(e) provides that "[u]nless otherwise provided in a written operating agreement, a member who assigns the member's entire interest in the limited liability company ceases to be a member or to have the power to exercise any rights of a member when an assignee of the member's interest becomes a member with respect to the assigned interest." Despite the option included in the statute to deviate from the provision on assignment of interest, the companies' operating agreements clearly state that a member who assigns all of his interest in the LLCs "shall no longer have any rights or privileges of a Member...." (Appellants' App. p. 82). As such, it would appear that the Zidans relinquished their fiduciary duties on August 4, 2006 and thus no longer have a course of action concerning the K–1 Schedules which were drawn up in the Fall of 2007.

In support of this statutory interpretation, the Abdallas direct us to the seventh circuit's decision in *Bane v. Ferguson,* 890 F.2d 11 (7th Cir.1989). In *Bane,* the plaintiff retired from his law firm with a pension, which, according to the terms of the retirement plan instrument, would end when and if the firm dissolved. *Id.* at 13. Several months later, the law firm merged with another firm. *Id.* This merger proved to be less than successful with the new firm folding and ending Bane's retirement benefit. *Id.* Bane filed a Complaint asserting that his old partners had breached a fiduciary duty to him because they had "acted unreasonably in deciding to merge the firm[.]" *Id.* Rejecting Bane's fiduciary duty claim, the seventh circuit court held that "[a] partner is a fiduciary of his partners, but not of his former part-

ners, for the withdrawal of a partner terminates the partnership as to him." *Id.*

However, we do not find *Bane* to be dispositive to the issue at hand. *Bane* did not involve a fiduciary duty claim concerning actions which had taken place pre-separation but whose consequences only materialized post-separation. Instead, Bane complained that partners in his former law firm breached fiduciary duties to him when they made a poor merger decision *after* he had withdrawn as a partner. He did not complain about decisions made before he decided to retire.

On the other hand, the Zidans focus our attention on *Thompson v. Central Ohio Cellular, Inc., f.k.a., Cellwave Inc., et al.*, 93 Ohio App.3d 530, 639 N.E.2d 462 (1994). In *Thompson*, after the plaintiff sold his shares to Cellwave in late 1991, the corporation had tax returns prepared for the 1991 tax year. *Id.* at 464. On April 1, 1992, Cellwave provided Thompson with a K–1 Schedule that reflected an allocation to him of more than $6 million in long-term capital gains for 1991. *Id.* Although Thompson claimed that the K–1 Schedule improperly shifted a significant tax burden to him, Cellwave refused to provide a corrected K–1 Schedule. *Id.* Thompson filed a complaint, alleging breach of fiduciary duty and fraud. *Id.*

Cellwave moved to dismiss Thompson's claim on the ground that it did not owe him a fiduciary duty since Thompson was no longer a shareholder at the time the tax return was prepared. *Id.* at 468. Invoking the 'shareholder termination rule,' Cellwave—like the Abdallas in the case at hand—asserted that the sale of Thompson's stock resulted in the termination of all fiduciary relationships between the corporation and Thompson. *Id.* at 469.

Analyzing the character of the 'shareholder termination rule,' the *Cellwave* court emphasized that the rule is not absolute. *Id.* at 470. The court specified that "[t]ermination of the fiduciary relationship does not shield the fiduciary from its duties or obligations concerning transactions which have their inception before the termination of the relationship." *Id.* Because the reporting to the IRS of Cellwave's financial results for the year 1991 was based on transactions which had their inception before the termination of the fiduciary relationship, the court concluded that Cellwave owed a fiduciary duty to Thompson. *Id.*

Likewise, here, we find that the Abdallas owed a fiduciary claim to the Zidans regarding the preparation of tax returns for the period during which the Zidans were members of the LLCs and shareholders of Q Realty. Although the tax returns were compiled after the Zidans separated from the companies, these returns are nevertheless based on transactions that occurred before the termination of the parties' fiduciary relationship. Thus, as the tax incurring actions took place during the existence of the fiduciary relationship, a fiduciary duty is owed regardless as to when the tax returns were actually completed. To hold otherwise would give the Abdallas the freedom to allocate tax burdens to the Zidans and retain tax benefits for themselves without allowing the Zidans any recourse to verify or rectify this allocation.

### III.  *Access to records*

The Abdallas contend that the trial court erred in denying their motion for summary judgment because there is no genuine issue of material fact that the Zidans are prohibited access to the companies' books as they no longer are members or shareholders. The Abdallas focus on Indiana Code section 23–1–52–2 which states that "a shareholder of a corporation is entitled to inspect and copy ... any of the records of the corporation[.]" Like-

wise, with regard to a LLC, the statute provides that "[a] member may, at the member's own expense, inspect and copy the limited liability company records[.]" I.C. § 23–18–4–8(b). In support of their argument, the Abdallas refer us to *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1314 (Ind.Ct.App.1993), *reh'g denied*, which they claim stands for the premise that a former shareholder does not have a statutory right to inspect books and records.

In *Biberstine*, the plaintiff requested and was denied access to the shareholder list in 1988 and again in 1989 while he still owned stock in the New York Blower Co. *Id.* at 1314. After Biberstine was terminated with the company in 1991, he again requested access to the shareholder list. *Id.* at 1312. Again, his request was denied. *Id.* Biberstine filed a complaint, arguing that because he had asked access in the past while he was still a shareholder, he should presently be allowed access to the list even though he no longer owns shares in the corporation. *Id.* We ruled that because the evidence is undisputed that on "May 24, 1991, Biberstine's stock was cancelled and his name removed from the list of shareholders of [New York Blower Co.]. Thus, on February 3, 1992, the date Biberstine's [c]omplaint was filed, he was no longer a shareholder of [New York Blower Co.] and had no statutory right to view the record of the shareholders." *Id.* We concluded that any remedy that may have been available to Biberstine in the past for obtaining access to the shareholder list has been forfeited by his failure to timely pursue the remedy. *Id.*

We agree with the Abdallas, that at the moment the Zidans requested to inspect the companies' records, they no longer were members of the LLCs or a shareholder of the corporation. They had withdrawn from the companies completely and assigned their entire interest in all entities to the Abdallas. However, unlike *Biberstine*, the Zidans requested access to financial information covering the time period while they were still members of the LLCs and shareholders of the corporation; they are not asking for access to *current* financial documents.

The power to order an inspection of books is so great, its exercise may affect unfavorably so many innocent stockholders, and may cause such inconvenience or perhaps such ruinous results to a corporation ... that the court ought to exercise the power with the greater care, and only when a case is presented which indicates, not only a *bona fide* desire to safeguard the interests of all stockholders, but a probability that the interests of all will be served by the proposed investigation.

*Dynamics Corp. of America v. CTS Corp.*, 479 N.E.2d 1352, 1355 (Ind.Ct.App.1985) (quoting *Holdsworth v. Goodall–Sanford, Inc.*, 143 Me. 56, 55 A.2d 130, 133 (1947)). Thus, the general rule applied to the court's review of inspection statutes has been that the primary purpose of the inspection must not be one that is adverse to the best interests of the corporation. *Dynamics Corp. of America*, 479 N.E.2d at 1355.

Here, the Zidans limited their request to inspect the books to certain, specified records and to the tax year 2006—when the Zidans were still members of the LLCs and shareholders in the corporation. Their specific goal was to ensure the correctness of the K–1 Schedules. Although the Zidans' request might inconvenience the Abdallas, this inspection is to the greater benefit of the companies and all parties. Accordingly, we conclude that the Zidans should be allowed limited access to the records, as this request covers a time while the Zidans had an interest in the

companies. As a result, we affirm the trial court's denial of the Abdallas' motion for summary judgment.

### IV. *Willful Misconduct or Gross Negligence*

■ Lastly, the Abdallas argue that the trial court erred by not granting them summary judgment with respect to the Zidans' negligence claim. Specifically, they asserted in their motion that the Zidans' claim sounds in ordinary negligence while corporate directors and members can only be held liable in case of willful misconduct or gross negligence. In support of their claim, the Abdallas designated Mike Abdalla's affidavit, asserting that it established that the record did not support a finding of willful misconduct or gross negligence.

Summary judgment is appropriate only if the designated evidentiary material shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. T.R. 56(C). The party moving for summary judgment bears the initial burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Choung v. Iemma*, 708 N.E.2d 7, 11 (Ind.Ct.App. 1999), *reh'g denied.* Here, in support of its claim for summary judgment that there is no genuine issue of material fact that the Abdallas did not commit willful misconduct or gross negligence, they only designated Mike Abdallas' affidavit. It is well-established that "[a] self-serving opinion is insufficient to meet the burden in a summary judgment proceeding." *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1027 (Ind.Ct.App.1999), *reh'g denied.* As the Abdallas failed to designate any other evidence, their claim necessarily fails. As a result, we affirm the trial court's denial of the Abdallas' motion for summary judgment.

### CONCLUSION

Based on the foregoing, we find that (1) the companies owed the former members of the LLCs and former shareholders of the corporation fiduciary duties regarding the preparation of tax documents covering the period before the separation but drawn up after the separation; (2) the former members of LLCs and former shareholders of the corporation have a right to inspect company books and records to evaluate tax documents drawn up after the separation but covering actions before the members and shareholders separated from the companies; and (3) the trial court properly denied the Abdallas' motion for summary judgment on their assertion of willful misconduct and gross negligence as they failed to designate evidence.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.