HENDRICKS COUNTY BOARD OF COMMISSIONERS, Appellant,

v.

RIETH–RILEY CONSTRUCTION CO., INC., Appellee.

No. 32A05–0610–CV–585.

Court of Appeals of Indiana.

June 25, 2007.

Gregory E. Steuerwald, Steuerwald, Zielinski & Witham, Danville, IN, Attorney for Appellant.

Jan M. Carroll, Mark J. Crandley, Barnes & Thornburg, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, The Board of Commissioners of The County of Hendricks, (the County Commissioners), appeals the trial court's Order on Cross–Motions for Summary Judgment, awarding partial summary judgment to Appellee–Petitioner, Rieth–Riley Construction Co. (Rieth–Riley). In its Order, the trial court granted declaratory judgment in favor of Rieth–Riley whereby it held that the Hendricks County Zoning Ordinance is invalid and illegal, and issued a writ of mandate at Rieth–Riley's request, ordering the Area Plan Commission of Hendricks County to approve Rieth–Riley's Development Plan and Minor Subdivision Plat.[1]

We affirm.

1. We hereby deny Prospective Amicus Curiae's Motion for Leave to Appear as Amicus

### ISSUES

The County Commissioners raise one issue on appeal which we restate as the following two issues:

(1) Whether the trial court erred in declaring the Hendricks County Zoning Ordinance (Ordinance) void and unenforceable because the Ordinance's development requirements conflict with the Local Planning and Zoning Enabling Act (Zoning Enabling Act); and

(2) Whether the County Commissioners have standing to appeal the trial court's writ of mandate, directing the Area Plan Commission of Hendricks County (Area Plan Commission) to approve Rieth–Riley's Development Plan and Minor Subdivision Plat.

### FACTS AND PROCEDURAL HISTORY

Rieth–Riley leases approximately thirteen acres of land in an unincorporated portion of Center Township, located in Danville, Hendricks County, Indiana on which it plans to build a hot-mix asphalt plant. The Ordinance classifies the real estate as major industrial. Other land surrounding Rieth–Riley's property is similarly classified and is actively put to an industrial use. Immediately to the north of the property is an active railroad line, and north of the railroad line is a concrete plant. To the east is a municipal airport, and to the west is a police shooting range. To the south is a landfill. There is no residential use in the immediate vicinity.

Sometime in 2005, Rieth–Riley submitted a detailed development plan (Development Plan) for the construction of the asphalt plant to the Area Plan Commission in accordance with Chapter 52 of the Ordi-

Curiae, filed with this court on December 12, 2006.

nance. The Ordinance mandates the Area Plan Commission to review development plans for new construction involving permitted industrial uses and sets forth application requirements for the development plan that includes traffic and circulation plans. In conducting its review, the Area Plan Commission will evaluate a development plan's consistency with:

a. [ ] the intent and purpose of this Ordinance;

b. [w]hether the proposed development advances the general welfare of the community and the neighborhood; and

c. [w]hether the benefits, combination of various land uses, and the interrelationship with the land uses in the surrounding area justify the deviation from standard district regulations.

(Ordinance, Ch. 52.04(A)(3)).

The Area Plan Commission conducted public hearings on Rieth–Riley's Development Plan on May 12 and 31, 2005. At the initial hearing, the Area Plan Commission's Secretary informed the Area Plan Commission that in addition to its Development Plan, Rieth–Riley had submitted a Minor Subdivision Plat. The Area Plan Commission's Staff also submitted drafts of written findings for the Area Plan Commission's review of Rieth–Riley's Development Plan: positive findings, to be entered if the Development Plan were approved and negative findings, to be entered in case of rejection of the Development Plan.

At the conclusion of the May 31, 2005 hearing, the Area Plan Commission voted five members to one to adopt the Staff's draft negative findings. No action was taken concerning the Minor Subdivision Plat. The draft findings concluded that while Rieth–Riley's Development Plan "is not consistent with the adopted land use element of the Comprehensive Plan ... [t]here is no reasonable expectation that the land use element's recommended resi-

dential land use will be found appropriate for the area given the historical industrial zoning and longstanding industrial ·character of the area." (Appellant's App. p. 262). Accordingly, the draft findings found that the Development Plan "can be considered consistent with the established zoning and compatible with existing and anticipated land use." (Appellant's App. p. 262). Nevertheless, the draft findings concluded that even though the Development Plan satisfies the requirements of the Ordinance, it "does not (A) promote the public heath, safety, welfare, comfort, and general welfare; and (B) conserve and protect property and property values." (Appellant's App. pp. 262–63).

Following the Area Plan Commission's vote at the May 31, 2005 hearing, the Secretary prepared the Findings of Fact/Law, which were approved during the June 14, 2005 meeting. These Findings of Fact/Law concluded that while the traffic to be generated by the Rieth–Riley construction did "not represent[ ] a significant decrease in the level of service on affected roads," it still "constitutes an unreasonable threat to public safety, unnecessarily degrades the quality of life for residents, and negatively influences property values in the area." (Appellant's App. p. 293).

On July 12, 2005, Rieth–Riley filed its Amended Petition for Writ of Certiorari, Writ of Mandate, and Declaratory Judgment pursuant to Ind.Code §§ 36–7–4–1003 and 36–7–4–1016. In its Petition, Rieth–Riley raised a four-Count allegation, requesting in Count I that the trial court issue a Writ of Certiorari declaring the Area Plan Commission's decision to be illegal. In Count II, Rieth–Riley demanded a Writ of Mandate, directing the Area Plan Commission to approve its Development Plan and Minor Subdivision Plan. Count III sought declaratory relief to invalidate the Ordinance because it contained factors

that are not allowed under the Zoning Enabling Act; while Count IV requested the trial court to void the Findings of Fact/Law. Thereafter, on May 22, 2006 and June 26, 2006 respectively, the parties filed cross-motions for summary judgment. On September 19, 2006, following a hearing, the trial court issued its Order on Cross–Motions for Summary Judgment finding, in pertinent part:

> [T]he [c]ourt now GRANTS in part and DENIES in part [Rieth–Riley's] motion for summary judgment and DENIES in part and GRANTS in part the cross motion filed by the [County Commissioners and the Area Plan Commission]. The [c]ourt therefore ORDERS that JUDGMENT be and hereby is entered in favor of Rieth–Riley and against the [County Commissioners and the Area Plan Commission] on Counts I, II, and III of [Rieth–Riley's] Complaint as follows:
>
> A. Pursuant to Ind.Code § 36–7–4–1009, the [c]ourt REVERSES the [Area Plan Commission's] decision denying approval of Rieth–Riley's Development Plan and REMANDS the matter with directions to the [Area Plan Commission] to approve, as submitted, Rieth–Riley's Development Plan and the Minor Subdivision Plat;
>
> B. Pursuant to Ind.Code § 34–27–1–1, the [c]ourt issues a Writ of Mandate ordering the [Area Plan Commission] to approve, as submitted, Rieth–Riley's Development Plan and Minor Subdivision Plat;
>
> C. The [c]ourt enters a declaratory judgment that (a) the [ordinance] is invalid and illegal because Chapter 52.04(A)(3) purports to permit the [Area Plan Commission] to deny approval of development plans based on factors other than those specified in the [Zoning Enabling Act] or on development standards not specified with particularity in the Ordinance; and (b) the [Area Plan Commission] has no right, power or authority under the [Zoning Enabling Act] to deny approval of development plans based on factors other than those compliant with the comprehensive plan and development standards adopted in the Ordinance as authorized by the [Zoning Enabling Act].
>
> The [c]ourt furthers ORDERS that JUDGMENT be and hereby is ENTERED in favor of the [County Commissioners] and the [Area Plan Commission] and against [Rieth–Riley] on Count IV of [Rieth–Riley's] Amended Complaint.

(Appellant's App pp. 13–14).

The County Commissioners now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

The County Commissioners dispute the trial court's Order on Cross–Motions for Summary Judgment, contending in essence that (1) as the County Commissioners did not enact an Ordinance that exceeds the scope of review awarded under the Zoning Enabling Act and Home Rule Act, the trial court erred in declaring the Ordinance void and unenforceable; and (2) the County Commissioners have standing to appeal the trial court's Writ of Mandate, which directed the Area Plan Commission to approve Rieth–Riley's Development Plan and Minor Subdivision Plat.

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, ap-

plying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com*, 816 N.E.2d at 48. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

## II. *The Validity of the Ordinance*

Contesting the trial court's judgment with regard to the validity of the Ordinance, the County Commissioners engage in a two-fold argument: (1) the Ordinance does not contravene the Zoning Enabling Act, and (2) both the Zoning Enabling Act and the Home Rule Act sanction the factors enacted in the Ordinance which served as the basis for the Area Plan Commission's denial of the Development Plan.

In analyzing the County Commissioners' contention, we are called upon to review the relevant provisions of the Zoning Enabling Act and the Home Rule Act. When asked to interpret an ordinance this court will apply the same principles as those employed for the construction of statutes. *T.W. Thom Constr., Inc. v. City of Jeffersonville*, 721 N.E.2d 319, 324 (Ind.Ct.App. 1999). A question of statutory interpretation is a matter of law to be determined *de novo* by this court. *Pendleton v. Aguilar*, 827 N.E.2d 614, 619 (Ind.Ct.App.2005), *reh'g denied, trans. denied.* We are not bound by a trial court's legal interpretation of a statute and need not give it deference. *Id.* We independently review the statute's meaning and apply it to the facts before us. *Id.* During our review, the express language of the statute and the rules of statutory construction apply. *Id.* As such, we will examine the statute as a whole and avoid excessive reliance on a strict literal meaning or the selective reading of words. *Id.*

We presume that our legislature intended its language to be applied logically and consistently with the underlying goals and policy of the statute. *Bambi's Roofing, Inc. v. Moriarty*, 859 N.E.2d 347, 353 (Ind. Ct.App.2006). The meaning and intention of the legislature is to be ascertained not only from the specific phraseology of a statute but also by considering design, nature and the consequences that flow from the various interpretations. *Concerned Citizens of West Boggs Lake v. West Boggs Sewer Dist., Inc.*, 810 N.E.2d 720, 723 (Ind.Ct.App.2004). Furthermore, statutes pertaining to the same general subject matter are *in pari materia* and should be interpreted together so as to produce a harmonious statutory scheme. *R.B. v. State*, 839 N.E.2d 1282, 1285 (Ind.Ct.App. 2005).

### A. *Zoning Enabling Act*

█ The Zoning Enabling Act specifies the requirements by which a local government may designate zoning districts in their jurisdiction. It permits local legisla-

tive bodies to divide their jurisdiction into zoning districts and mandates property owners to submit a development plan before engaging in a project in the particular zoning district. *See* I.C. § 36–7–4–1401.5. To establish these zoning districts, the Zoning Enabling Act requires the legislative body—here, the County Commissioners—to enact a local ordinance that *"must specify"* the "[d]evelopment requirements that must be satisfied before the plan commission may approve a development plan." I.C. § 36–7–4–1402(b)(1) (emphasis added). The Zoning Enabling Act itself provides a non-exclusive enumeration of the type of development requirements that "must be specified under section 1402(b)(1)." I.C. § 36–7–4–1403(a). In general, the list permits the following development requirements:

(1) Compatibility of the development with surrounding land uses.

(2) Availability and coordination of water, sanitary sewers, storm water drainage, and other utilities.

(3) Management of traffic in a manner that creates conditions favorable to health, safety, convenience, and the harmonious development of the community.

(4) Building setback lines.

(5) Building coverage.

(6) Building separation.

(7) Vehicle and pedestrian circulation.

(8) Parking.

(9) Landscaping.

(10) Height, scale, materials, and style of improvements.

(11) Signage.

(12) Recreation space.

(13) Outdoor lighting.

(14) Other requirements considered appropriate by the legislative body [the County Commissioners]

I.C. § 36–7–4–1403(a).

Once the legislative body enacts an ordinance, detailing the development requirements for the different zoning districts, a plan commission—the Area Plan Commission—is awarded the exclusive authority to approve or disapprove if a party's proposed development plan satisfies the development requirements for the particular zoning district. *See* I.C. § 36–7–4–1401.5(a) & (b). Elaborating on the powers and duties of the plan commission, the Zoning Enabling Act in section 1405(a) specifies that

> The plan commission shall review a development plan to determine if the development plan:
> (1) is consistent with the comprehensive plan; and
> (2) satisfies the development requirements specified in the zoning ordinance under sections 1402 and 1403 of this chapter.

Here, the designated evidence indicates that upon reviewing Rieth–Riley's Development Plan, the Area Plan Commission explicitly concluded that the Development Plan was consistent with the comprehensive plan and that the proposal satisfied the development requirements of the Zoning Enabling Act.

Nevertheless, next, the Area Plan Commission compared the Development Plan with three additional development requirements listed in the Ordinance, section 52.04(A)(3), *i.e.*, (1) consistency with the intent and purpose of the Ordinance; (2) advancement of the general welfare of the community and neighborhood; and (3) whether the benefits, combination of various land uses, and the interrelationship with the land uses in the surrounding area justify the deviation from standard district

regulations. In particular, the Area Plan Commission found:

(a) **Consistent with the intent and purpose of this Ordinance;**

[T]he [Development Plan] does not (A) promote the public health, safety, welfare, and general welfare; or (B) conserve and protect property and property values.

(b) **Whether the proposed development advances the general welfare of the community and neighborhood.**

The [Area Plan Commission] finds that this proposal does not advance the general welfare of the community and the neighborhood. The proposal represents a significant threat to air quality in a community that is already designated an EPA "non-attainment" area for air quality. Further degradation of air quality will seriously impair community quality of life, hurt the community's reputation as a progressive, vital community, and will have a negative influence on economic development. This in turn will have a detrimental effect on property values especially along the entryway to Danville. Further, although the use is proposed to locate next to an existing industrial use, the two uses are very different in terms of producing noxious byproducts. The constituents of the emissions from the proposed use are well known and clearly documented, and a number of them are shown to pose health risks. Although the applicant has received an approved IDEM air quality permit, not all of the constituents emitted from the proposed use are regulated. Therefore, while IDEM approval is significant, it is not the only consideration in the [Area Plan Commission's] determination on what advances the general welfare of the community when it comes to air quality. In this instance, there is substantial evidence that the sum total of emitted constituents (regulated and unregulated) pose an unacceptable risk to the general welfare.

Further, the [Area Plan Commission] finds that the traffic generated by this proposal, while not representing a significant decrease in the level of service on the affected roads, nevertheless adds additional truck traffic to a local transportation system already overburdened with truck traffic from the IMI plant, the recycling center, and the landfill. The additional truck traffic constitutes an unreasonable threat to public safety, unnecessarily degrades the quality of life for residents, and negatively influences property values in the area.

(Appellant's App. pp. 292–93) (emphasis in original).

Referencing the Ordinance's three additional factors, Rieth–Riley contends that the Area Plan Commission's power exceeded the permissible scope of review granted to it under the Zoning Enabling Act. As the Ordinance allows the Area Plan Commission to reject a development plan based on considerations other than those mandated by the General Assembly in the Zoning Enabling Act, Rieth–Riley maintains that the Ordinance should be declared void and unenforceable.

In response, the County Commissioners contend that the Ordinance's additional factors are valid under the broad catch-all provision formulated in section 1403(a)(14) of the Zoning Enabling Act, i.e., "[o]ther requirements considered appropriate by the legislative body." Alternatively, they assert validity of the Ordinance under the provisions of the Home Rule Act.

Our reading of the Zoning Enabling Act discloses that section 1402(b)(1) allows the County Commissioners to choose the development requirements that must be satisfied in a specific zoning district upon adopting its Ordinance. These develop-

ment requirements may include the factors explicitly listed in section 1403(a)(1)-(13) of the Zoning Enabling Act or anything else that can be contained under the broad catch-all provision of chapter (14) of the section. In the case before us, it is clear that the County Commissioners exercised their discretionary power in promulgating its Ordinance by employing the catch-all provision in its description of the particular development criteria which must be reviewed by the Area Plan Commission prior to granting approval or disapproval to a development plan. Without any further guidance in the Zoning Enabling Act besides the provision "other requirements considered appropriate by the legislative body," we cannot say that the additional three requirements included by the County Commissioners in Ordinance, Ch. 52.04(A)(3) violate section 1403(a) of the Zoning Enabling Act.[2] Nevertheless, our inquiry does not end here.

### B. *Specificity Requirement of the Zoning Enabling Act*

■ Next, we need to determine whether the County Commissioners sufficiently specified the development requirements enacted in the Ordinance, pursuant to section 1402(b) and 1403(a) of the Zoning Enabling Act. In this regard, the County Commissioners claim that the trial court erred by concluding that the three development standards were not specified with particularity in the Ordinance. Focusing on similar language in relevant case law, they contend the phrasing employed by the Ordinance's development requirements is valid. Conversely, standing by the trial court's conclusion, Rieth–Riley asserts that the Ordinance's three additional development factors are too vague to inform a property owner with reasonable certainty as to the restrictions imposed on his property.

■ It is well settled that zoning ordinances must be precise, definite, and certain in expression so as to enable both the landowner and the municipality to act with assurance and authority regarding local land use decisions. *T.W. Thom Const., Inc.*, 721 N.E.2d at 327. This requirement is dictated by due process considerations in that the ordinance must provide fair warning as to what the governing body will consider in making a decision. *Id.*

The language at issue is encompassed in the Ordinance, Ch. 52.04(A)(3), which stipulates that, in conducting its review, the Area Plan Commission will evaluate a development plan's consistency with:

a. [ ] the intent and purpose of this Ordinance;

b. [w]hether the proposed development advances the general welfare of the community and the neighborhood; and

c. [w]hether the benefits, combination of various land uses, and the interrelationship with the land uses in the surrounding area justify the deviation from standard district regulations.

In support of its claim of trial court error, the County Commissioners focus this court's attention on a set of three cases, purportedly standing for the proposition that the mere inclusion of the phrase 'general welfare' is sufficiently concrete: *Burrell v. Lake County Plan Com'n*, 624 N.E.2d 526, 528–30 (Ind.Ct.App.1993), *trans. denied; Wolff v. Mooresville Plan Com'n*, 754 N.E.2d 589, 592 (Ind.Ct.App. 2001); and *Hickory Hills Dev. Co., LLC v. Coffman*, 699 N.E.2d 1214, 1217 (Ind.Ct. App.1998), *trans. denied.* Upon careful review, we find each of these cases inapposite to the situation at hand. Unlike here,

---

**2.** Because we decide this issue based on the Zoning Enabling Act, we do not need to analyze the County Commissioners' alternative argument concerning the Home Rule Act.

in both *Burrell* and *Wolff,* the disputed language, originally a solitary mention, was further specified in the respective ordinances. In fact, we found the clarification of 'health, safety, or general welfare' to be pivotal in *Burrell,* as we stated that "[m]ost importantly, this health, safety, and general welfare language does not stand alone. Another section of the [o]rdinance instructs the Commission and the property owners alike on the sorts of adverse effects that would properly serve as a basis for denial." *Burrell,* 624 N.E.2d at 530. Analogizing to *Burrell,* the *Wolff* court also refused to find the statement to be vague because "the ordinance lists several items that will be considered by the Commission. . . ." *Wolff,* 754 N.E.2d at 593. However, the third case relied upon by the County Commissioners, *Hickory Hills Dev. Co.,* turned on the issue of whether a county planning commission is empowered to apply discovery rules. *Hickory Hills Dev. Co., LLC,* 699 N.E.2d at 1216. In footnote 5, this court briefly referred to the concrete standard of 'health, safety, or general welfare.' *Id.* at 1217 n. 5. A mere cursory reference in a footnote is dicta and does not equate to a holding of a case. Accordingly, *Burrell* and its progeny do not approve ordinances that unilaterally allow a plan commission to determine for itself what is in the 'general welfare,' rather the cited authority relies on a more detailed specification elsewhere in the ordinance to clarify the general term.

■ In sum, we conclude that the particular three factors included within the Ordinance, Ch. 52.04(A)(3) run contrary to the limitation on the Area Plan Commission under the strictures of Indiana's zoning system. While the County Commissioners are allowed to exercise discretion with regard to the development requirements when the Ordinance is created pursuant to section 1403(a) of the Zoning Enabling Act, these requirements must be sufficiently definite to be understood with reasonable certainty. *See Fulton County Advisory Plan Com'n v. Groninger,* 810 N.E.2d 704, 709 (Ind.2004), *reh'g denied.* As soon as the Ordinance is applied by the Area Plan Commissioners, all discretion ceases to exist as the Zoning Enabling Act provides in section 1405 that "[t]he plan commission shall review a development plan to determine if the development plan: . . . (2) satisfies the development requirements *specified* in the zoning ordinance under sections 1402 and 1403 of this chapter." (emphasis added). Thus, once the development requirements are specified in the Ordinance, the Area Plan Commission is not vested with discretion to construe them but must instead apply them as a ministerial act. *See Burrell,* 624 N.E.2d at 532.

Here, however, the Ordinance gives the Area Plan Commission unfettered power to deny development plans if it decides, by whim or otherwise, that the plan contravenes one of the factors listed in the Ordinance, Ch. 52.04(A)(3). The designated evidence lacks any reference to more detailed objective standards included in the Ordinance which would provide the landowners with a fair warning as to what the governing body will consider when formulating its decision. *See T.W. Thom Const., Inc.,* 721 N.E.2d at 327.

■ Accordingly, we agree with the trial court that the Area Plan Commission cannot exercise the sort of discretion reserved to a legislative body enacting a law or ordinance and that any attempt to delegate such broad authority would be improper. *See Burrell,* 624 N.E.2d at 532. Within the area of administrative law generally, the courts of this State have held that although a legislative body may not delegate the power to make a law, it may

delegate to an administrative body the power to determine facts upon which the law's action depends. *Id.* In other words, "a legislative body may enact a law, the operation of which depends upon the exercise of a stipulated condition, and ... it may delegate to a ministerial agency the power to determine whether the condition exists." *Id.* (quoting *Campbell v. Heiss,* 222 Ind. 297, 53 N.E.2d 634, 636 (1944)). The Area Plan Commission's review of the development requirements in the Ordinance, Ch. 52.04(A)(3) is not a mere ministerial act, but rather is vested with the discretionary power typically reserved to the County Commissioners by the legislature. Therefore, we agree with the trial court and find the Ordinance to be void and unenforceable because the Ordinance's provisions regarding development requirements conflict with the Local Planning and Zoning Enabling Act as they do not satisfy the specificity requirements of sections 1402(b) and 1403(a).

### III. *Standing*

▮ Lastly, the County Commissioners contend that they have standing to appeal the entire judgment because their rights are directly affected. As Rieth–Riley concedes the County Commissioners' standing to challenge the trial court's declaratory judgment concluding that the Ordinance is void and unenforceable, we will only review the County Commissioners' standing as it relates to the trial court's writ of mandate requiring the Area Plan Commission to approve the Development Plan.

As we stated before, the trial court ordered that:

Pursuant to Ind.Code § 34–27–1–1, the [c]ourt issues a WRIT OF MANDATE ordering the [Area Plan Commission] to approve, as submitted, Rieth–Riley's Development Plan and Minor Subdivision Plat[.]

(Appellants' App. p. 14). According to Indiana Code section 34–27–3–1, "[a]n action for mandate may be prosecuted against an inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any: (1) act that the law specifically requires; or (2) duty resulting from any office, trust, or station."

▮ The judicial doctrine of standing is intended to assure that litigation will be actively and vigorously contested. *Schloss v. City of Indianapolis,* 553 N.E.2d 1204, 1206 (Ind.1990), *reh'g denied.* Under our general rule of standing, only those persons who have a personal stake in the outcome of the litigation and who show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct will be found to have standing. *State ex rel. Cittadine v. Indiana Dept. of Transp.,* 790 N.E.2d 978, 979 (Ind.2003). Absent this showing, complainants may not invoke the jurisdiction of the court. *Id.* It is generally insufficient that a plaintiff merely has a general interest common to all members of the public. *Id.* With regard to standing in an action for mandamus, we have noted that "[a] party requesting mandate must have a clear and unquestioned legal right to the relief sought and must show that the respondent has an absolute duty to perform the act demanded." *State ex rel. Steinke v. Coriden,* 831 N.E.2d 751, 756 (Ind.Ct.App.2005), *trans. denied* (quoting *Brant v. Custom Design Constructors Corp.,* 677 N.E.2d 92, 95 (Ind.Ct.App. 1997)); *see also Tippecanoe County Area Plan Comm'n v. Sheffield Dev., Inc.,* 181 Ind.App. 586, 394 N.E.2d 176, 179 (1979)(developers had standing where commission had a clear legal duty to approve the developers' preliminary plat).

In the case at bar, it is undeniable that Rieth–Riley, the party requesting man-

date, had a clear and unquestioned legal right to request the trial court to order the Area Plan Commission to approve the Development Plan. Pursuant to section 1401.5(b) of the Zoning Enabling Act, the Area Plan Commission has the "exclusive authority to approve or disapprove a development plan." Because the writ of mandate issued by the trial court compels only the Area Plan Commission to take an action that falls exclusively within its province, the County Commissioners cannot perform the act demanded in the writ. Therefore, we conclude that the County Commissioners have no standing to appeal the trial court's writ of mandamus. *See State ex rel. Steinke*, 831 N.E.2d at 756.[3]

 Even assuming *arguendo* that the County Commissioners have standing to appeal the action for mandate, we would still affirm the trial court's Order. The Zoning Enabling Act specifies in section 1405(a) that

> The plan commission shall review a development plan to determine if the development plan:
>
> (1) is consistent with the comprehensive plan; and
>
> (2) satisfies the development requirements specified in the zoning ordinance under sections 1402 and 1403 of this chapter.

In effect, the designated evidence indicates that upon reviewing Rieth–Riley's Development Plan, the Area Plan Commission explicitly concluded that the Development Plan was consistent with the comprehensive plan and that the proposal satisfied the development requirements of the Zoning Enabling Act. Moreover, the Area Plan Commission did not have the discretion to rely on the other factors, enumerated in the Ordinance, Ch. 52.04(A)(3) yet not sufficiently specified to provide the landowner with a fair warning. As Rieth–Riley's Development Plan clearly complied with the only valid development requirements, the trial court properly ordered the Area Plan Commission to take the ministerial step of approving the Development Plan through a writ of mandamus.

## CONCLUSION

Based on the foregoing, we conclude the trial court properly (1) declared the Hendricks County Zoning Ordinance (Ordinance) void and unenforceable because the Ordinance's additional development requirements are not sufficiently definite; and (2) issued a writ of mandamus to the Area Plan Commission, which the County Commissioners lack standing to appeal.

Affirmed.

NAJAM, J., and BARNES, J., concur.

---

**3.** As an additional argument, the County Commissioners assert standing based on the case law proponing that local officials have standing to challenge an interpretation of application of a statute. However, none of the referenced cases involve the specific situation of mandamus.