**TIMBERLAKE, INC., Appellant–Plaintiff,**

v.

**Daniel P. O'BRIEN, Appellee–Defendant.**

No. 46A03–0803–CV–134.

Court of Appeals of Indiana.

March 13, 2009.

Martin W. Kus, Bradley J. Adamsky, LaPorte, IN, Attorneys for Appellant.

Shaw R. Friedman, Friedman & Associates, P.C., LaPorte, IN, Robert W. Wright, Dean–Webster, Wright & Kite, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Timberlake, Inc. (Timberlake), appeals the trial court's de-

nial of its motion for summary judgment to quiet title to a railroad right-of-way and for trespass. Appellee–Defendant, Daniel O'Brien (O'Brien), cross-appeals the trial court's finding that he held a railroad right-of-way easement rather than a fee interest in the railroad property.

We affirm.

## ISSUES

Timberlake raises one issue on appeal, which we restate as: Whether the trial court erred when it determined that CSX conveyed a railroad right-of-way easement to O'Brien.

On cross-appeal, O'Brien raises one issue, which we restate as: Whether the trial court erred in finding that he merely held a railroad right-of-way easement rather than a fee interest in the railroad property.

## FACTS AND PROCEDURAL HISTORY

In 1973, Timberlake purchased 40 acres of wooded property, including an 8 acre lake, in LaPorte County, Indiana, pursuant to a warranty deed. Timberlake bought the property for the private use of its shareholders and guests as a campground and recreation site. At the time of the purchase, CSX, a railroad company, held a right-of-way easement over a 99 foot wide strip of land (Railroad Property) running in a northwestern direction over and adjoining sections of Timberlake's property as part of a railroad corridor.

This right-of-way easement was originally conveyed to the Indiana and Michigan Railroad Company, the predecessor railroad company of CSX, in 1881 by the owners of three separate but adjoining parcels of land pursuant to three deeds: the Gotto Deed, the Everts Deed, and the Edinger Deed. Each handwritten instrument allowed the Indiana and Michigan Railroad Company to construct, maintain, and use a railroad over the strip of land in each parcel. The Gotto Deed states, in relevant part:

This Indenture Made this third day of August, A.D., 1881 between Mathias Gotto ... of the first part and the Indiana and Michigan Railroad Company of the second part, Witnesseth That [Gotto] in consideration of the sum of Thirty Dollars to him in hand paid, the receipt whereof is hereby acknowledged, do grant, bargain, sell and confirm unto [the Indiana and Michigan Railroad Company], and its successors, lessees and assigns forever, a strip of land for a right of way six rods in width across the north twenty acres of the west half of section ten (10), Town number thirty eight (38) North Range Three (3) east, County of LaPorte, State of Indiana, said strip of land or right of way to extend three rods on either side of the center line of said railroad as now located over or across said described premises, and according to the map and survey thereof to be filed in the office of the Register of Deeds of said county, for [the Indiana and Michigan Railroad Company] and its successors, lessees and assigns, and their servants and agents to build, construct and maintain a railroad in and over said strip of land, and at all times to pass and repass by themselves, their servants, agents and employees with their engines, cars, horses, cattle, carts, wagons and other vehicle, and transport freight and passengers, and do all other things properly connected with or incident to the location, building, maintaining and servicing the said road and to use the earth and other materials within said strip of land for that purpose. To have and to hold the said easements and privileges to [the Indiana and Michigan Railroad Company] and its successors, lessees and as-

signs forever. [Gotto] is to construct a convenient point as may be designated by [the Indiana and Michigan Railroad Company] when needed, and [Gotto] for himself and his heirs does covenant and agree that he will warrant and defend the above granted right of way in the peaceable and quiet possession of [the Indiana and Michigan Railroad Company], its successors, lessees and assigns forever.

(Appellant's App. p. 249).

The Everts Deed provides, in relevant part:

This Indenture Made this fourth day of August, A.D., 1881 between [Everts], of the first part and the Indiana and Michigan Railroad Company of the second part, Witnesseth that [Everts], in consideration of the sum of One Hundred twenty five dollars to them in hand paid, the receipt whereof is hereby acknowledged do grant, bargain, sell and confirm unto the [Indiana and Michigan Railroad Company], and its successors, lessees and assigns forever, a strip of land for a Right of Way six rods in width across the North Ninety three acres off the South West Quarter of Section number Ten (10), Town Thirty eight (38) North, Range Three (3) West, County of LaPorte, Ind., said strip of land or right of way to extend three rods on either side of the center line of said Railroad, as now or hereafter to be located over or across said described premises, and according to the map and survey thereof to be filed in the office of the Register of Deeds of said County. For the [Indiana and Michigan Railroad Company], and its successors, lessees and assigns, and their servants and agents to build, construct and maintain a railroad in and over said strip of land and at all times to pass and repass by themselves, their servants, agents and employees with their engines, cars, horses, cattle, carts, wagons and other vehicle, and transport freight and passengers, and do all other things properly connected with or incident to the location, building, maintenance and running the said road, and to use the earth and other materials within said strip of land for that purpose, To Have and to Hold the said easements and privileges to the [Indiana and Michigan Railroad Company] and its successors, lessees and assigns forever. The [Indiana and Michigan Railroad Company] is to provide a suitable crossing for the use of [Everts] at some convenient point on said premises, and the [Everts] for themselves and their heirs, do covenant and agree that they will Warrant and defend the above granted Right of Way in the peaceable and quiet possession of the [Indiana and Michigan Railroad Company], its successors, lessees, and assigns forever.

(Appellant's App. p. 252).

Lastly, the Edinger Deed states, in relevant part:

This Indenture Made this day Of August, A.D., 1881 between [Edinger] of the first part and the Indiana and Michigan Railroad of the second part Witnesseth That ____ [Edinger] in consideration of the sum of Seventy Five Dollars to ____ in hand paid, ____ receipt whereof is hereby acknowledged to grant, bargain, sell and confirm unto said the [Indiana and Michigan Railroad Company] and its successors, lessees and assigns forever, a strip of land for a right of way six rods in width across south east quarter of southwest quarter of section number ten (10), Town thirty-eight (38) north Range number three (3) west County of LaPorte Indiana, said strip of land or right of way to extend three rods on either side of the center line of said railroad as now located over

or across said described premises, and according to the map and survey thereof filed in the office of the Register of Deeds of said county for the [Indiana and Michigan Railroad Company] and its successors, lessees and assigns and their servants and agents to build, construct and maintain a railroad in and over said strip of land and at all times to pass and repass by themselves, their servants, agents and employees, with their engines, cars, horses, cattle, carts, wagons and other vehicles and transport freight and passengers, and do all other things properly connected with or incident to the location, building, maintaining and running the said road, and to use the earth and other materials within said strip of land for that purpose. To have and to hold the said easements and privileges to the [Indiana and Michigan Railroad Company] and its successors, lessees and assigns forever, and [Edinger] for himself and his heirs do covenant and agree they will warrant and defend the above granted right of way in the peaceable and quiet possession of the [Indiana and Michigan Railroad Company], its successors, lessees and assigns forever.

(Appellant's App. p. 255). Over the years, the three properties were consolidated into one parcel which was acquired by Timberlake in 1973.

On July 31, 1988, CSX filed a notice with the Interstate Commerce Commission indicating its intent to abandon the railroad running over Timberlake's property. On June 28, 1990,[1] before it had removed its rails, ties, and ballast, CSX conveyed its interest in the Railroad Property by quitclaim deed to O'Brien, who already owned a nearby golf course and parcels of land adjacent to the Railroad Property. The quitclaim deed states that O'Brien "is familiar with the current and past use(s) of the Premises." (Appellant's App. p. 108). O'Brien concedes that the only rights he acquired in the Railroad Property are the ones that were originally granted to the predecessor of CSX pursuant to the three 1881 Deeds. In 1991, CSX removed its rails, ties and ballast from the Railroad Property.

Because CSX sold almost its entire abandoned railroad corridor property, landowners in Indiana filed a class action suit in 1994 against CSX in the Hamilton County Superior Court for slander of title and to quiet title to the land purportedly abandoned by CSX. By filing the suit, the class members intended to have their title clarified after CSX's prior sales and requested the trial court to declare that the landowner's interest in the abandoned land was superior to the interests of CSX. As Timberlake's property was underlying and adjoining the Railroad Property, it was a member of the class action suit.

On January 18, 2000, the class members and CSX entered into a settlement agreement which was approved by the trial court on July 25, 2002. Under the settlement agreement, the Railroad Property was determined to be part of the settlement provisions. Pursuant to the agreement's provisions, the Hamilton Superior Court retained jurisdiction to review the deeds of the property in each county and to declare if the title held by the class member was superior to CSX's. On November 26, 2003, the Hamilton Superior Court issued a Declaratory Judgment for LaPorte County declaring that Timberlake

---

1. Both parties use different dates for the conveyance by quitclaim deed. Our review of the documents reveals that the quitclaim deed was entered into on June 28, 1990, between CSX and O'Brien, whereas the deed was "duly entered for taxation" by the Auditor of LaPorte County on July 11, 1990. (Appellant's App. p. 108).

had superiority of title over CSX as to the easement property. However, the trial court specified the limitations of its order as follows:

The [c]ourt further declares that it is not within the scope of this Declaratory Judgment to resolve title disputes between individual persons which may occur as a result of conveyances of portions of the Settlement Corridor prior to the entry of this Judgment or otherwise, and that such disputes, to the extent any have arisen or may arise, must be resolved by the individual parties concerned.

(Appellant's App. p. 31).

In March of 2004, O'Brien cleared the drainage ditches on the Railroad Property and placed a large metal barrier on the Railroad Property, interfering with Timberlake's access to its property. On June 29, 2004, in response to O'Brien's action, Timberlake brought suit in LaPorte Circuit Court to quiet title to the Railroad Property and for trespass, to declare that Timberlake was entitled to an easement by necessity, and to enjoin O'Brien from blocking access to its property. In his answer, O'Brien conceded that he had purchased the right-of-way from CSX and therefore claimed all rights granted to CSX's predecessor pursuant to the three 1881 Deeds. Prior to the hearing on Timberlake's request for a preliminary injunction, O'Brien agreed to remove the barrier.

On December 1, 2005, Timberlake filed its motion for summary judgment on its claim to quiet title to the Railroad Property. In its motion, Timberlake asserted that CSX only held a railroad easement to the Railroad Property and by abandoning the Railroad Property prior to executing the quitclaim deed with O'Brien, CSX extinguished the right-of-way easement. Timberlake maintained that as a result, O'Brien had no claim to the Railroad Property. On January 2, 2008, the trial court denied Timberlake's motion for summary judgment.[2] The trial court concluded that the 1881 Deeds of the Railroad Property instituted right-of-way easements for use by a railroad and could not be characterized as transfers in fee. The trial court held that because CSX had not yet removed its track and ballast from the Railroad Property at the time of conveyance sale to O'Brien in 1990, the Railroad Property was not abandoned and therefore O'Brien received a railroad right-of-way interest.

Timberlake now appeals and O'Brien cross-appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Both parties appeal the trial court's denial of Timberlake's motion for summary judgment. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Hendrick County Bd. of Comm'rs v. Rieth–Riley Constr. Co., Inc.,* 868 N.E.2d 844, 848–49 (Ind.Ct.App.2007). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 849. In doing so, we consider all of the designated

---

**2.** The delay between Timberlake's filing of its motion for summary judgment and the trial court's order was due to three judges recusing themselves based upon possible conflict of interest and a change in trial court judge because of an election.

evidence in the light most favorable to the non-moving party. *Id.*

We observe that in the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind.Ct.App.2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Appeal & Cross–Appeal*

Typically, when parties file cross-appeals, we consider each appeal separately. However, because both the appeal and cross-appeal claim that the trial court erred in its legal characterization of the Railroad Property, we will analyze the appeals at the same time as it is clear that the raised issues are intertwined.

On appeal, Timberlake contests the trial court's determination that O'Brien holds a railroad right-of-way easement. In developing its argument, Timberlake focuses on CSX's actions that might support an abandonment of the Railroad Property. Relying on CSX's filing of intent of abandonment with the Interstate Commerce Commission (ICC) and CSX's purported removal of the railroad tracks prior to the conveyance of the Railroad Property, Timberlake asserts that CSX had abandoned its property and could not convey any interest to O'Brien. Thus, Timberlake claims that O'Brien owns "nothing" and that the trial court erroneously concluded that O'Brien's interest is superior to Timberlake's fee simple interest. (Appellant's Br. p. 19).

On the other hand, in his cross-appeal, O'Brien requests us to reverse the trial court's conclusion that he merely holds a railroad right-of-way easement and to conclude that instead he owns an estate in fee in the Railroad Property. Interpreting the language used in the 1881 Deeds, O'Brien contends that each of the grantors intended to convey the strip of land to the railroad forever, thereby creating an estate in fee. Alternatively, O'Brien asserts that he, at a minimum, acquired an easement that can be used consistent with the express provisions in the deeds, *i.e.*, "to pass and repass ... engines, cars, horses, cattle, carts, wagons, and other vehicle." (Appellant's App. pp. 249, 252, and 255).

Initially, we note that O'Brien, as a threshold argument, complains that Timberlake failed to designate evidence that establishes, as a matter of law, its own title to the Railroad Property. As our supreme court has long recognized, "[t]he plaintiff in an action to quiet title must recover if at all upon the strength of his own title and not upon the lack of title in the defendant." *Denham v. Degymas*, 237 Ind. 666, 147 N.E.2d 214, 219 (1958). However, O'Brien failed to make this argument before the trial court. Generally, a party may not raise an issue on appeal that was not raised in the trial court. *Fortmeyer v. Summit Bank*, 565 N.E.2d 1118, 1120 (Ind. Ct.App.1991). This rule equally applies to summary judgment proceedings. *Id.* Therefore, we conclude that O'Brien has waived this issue for our review.

Turning to the merits of the appeal and cross-appeal before us, we must consider whether CSX's predecessor-in-interest held a fee simple title or only an easement over the Railroad Property, and if only an easement, whether the easement was abandoned prior to CSX's conveyance to O'Brien. In determining the interest conveyed to the railroad, a court will seek to give effect to the intent of the

parties. *Tazian v. Cline,* 686 N.E.2d 95, 97 (Ind.1997).

> [O]ne of the most important rules in the construction of deeds is so to construe them that no part shall be rejected. The object of all construction is to ascertain the intent of the parties and it must have been their intent to have some meaning in every part. It never could be a man's intent to contradict himself; therefore we should lean to such a construction as reconciles the different parts, and reject a construction which leads to a contradiction ...

*Ross, Inc., v. Legler,* 245 Ind. 655, 199 N.E.2d 346, 348 (1964) (citing *Claridge v. Phelps,* 105 Ind.App. 344, 11 N.E.2d 503, 504 (1937)). Accordingly, in construing a deed, a court should regard the deed in its entirety, considering the parts of the deed together so that no part is rejected. *Brown v. Penn Centr. Corp.,* 510 N.E.2d 641, 643 (Ind.1987). "[W]here there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone." *Id.* at 641. Courts consider the "known use to which the property was to be subjected and therefrom give the conveyance the effect intended by the parties." *Ross, Inc.,* 199 N.E.2d at 349 (footnote omitted). Bearing in mind that a railroad is responsible for the printed words when the railroad prepares a conveyance form, we will construe the form in a light most favorable to the grantors. *Hefty v. All Other Members of the Certified Settlement Class,* 680 N.E.2d 843, 853–54 (Ind.1997), *reh'g denied.* In order to give effect to the parties' intent in this particular case, we are required to interpret three nineteenth century handwritten Deeds. In doing so, we are aided by nearly a century's worth of common law decisions dealing with conveyances to railroads. *See Tazian,* 686 N.E.2d at 97.

It is well settled that a deed that conveys "a right generally conveys an easement." *Richard S. Brunt Trust v. Plantz,* 458 N.E.2d 251, 253 (Ind.Ct.App. 1983) (numerous citations omitted). The general rule is that a conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such conveyance typically leads to its construction as conveying only an easement. *L. & G. Realty & Constr. Co. v. City of Indianapolis,* 127 Ind.App. 315, 139 N.E.2d 580, 585 (1957), *reh'g denied.*

In *Brown,* 510 N.E.2d at 644, the deed conveyed to the railroad "the Right of Way for the use of the Railroad ..." and "a strip Two hundred feet in width ... for Depot and Rail Road purposes." The dispute centered on whether the two hundred foot strip used for the depot was an easement. The supreme court found that the deed, clearly falling within the general rule articulated above, conveyed only an easement. *Id.* Here, as in *Brown,* the handwritten Deeds contain, along with the term "a strip of land for a right of way," additional language indicating the purpose for which the land was to be used: "to build, construct and maintain a railroad in and over said strip of land, and at all times to pass and repass by themselves, their servants, agents and employees with their engines, cars, horses, cattle, cars, wagons and other vehicle, and transport freight and passengers, and do all other things properly connected with or incident to the location, building, maintaining and servicing said road[.]" (Appellant's App. pp. 249, 252, and 255). In further support for the finding of an easement, we note that all three Deeds clearly indicate that these "easements and privileges" were granted

to the railroad. (Appellant's App. pp. 249, 252, and 255).

On the other hand, in support of his argument that the three Deeds convey a fee simple, O'Brien focuses on the usage of the word "forever" in the granting clause of each Deed. Although the use of the temporal descriptor "forever" favors the construction of the deed as conveying a fee simple absolute to the railroad company, such language is merely a factor in determining whether the parties intended to grant a fee or an easement. *See, e.g., Tazian,* 686 N.E.2d at 98 (the use of "grant and convey and warrant" is just a factor in determining the parties' intent).

Likewise, O'Brien references the consideration paid by the railroad. In the Gotto Deed the compensation is thirty dollars, in the Everts Deed it amounts to one hundred and twenty-five dollars, and the Edinger Deed provides for a compensation of seventy-five dollars. O'Brien argues that "these amounts in 1881 dollars are not nominal especially when compared to Timberlake's purchase of much greater property in 1973[.]" (Reply Br. O'Brien p. 6). We have stated before that "where the consideration is nominal or where the only consideration is the benefit to be derived by the grantor from the construction of the railroad rather than the full market value for the interest acquired reflects the intent to create an easement." *Brunt Trust,* 458 N.E.2d at 255. However, the designated evidence is devoid of any indication as to the full market value of the respective

strips of land in 1881. Thus, absent some record of the value of the land in 1881, we do not consider the amount of consideration paid to be conclusive as to the intent of the parties.

In light of the clear language indicating the conveyance of a right-of-way combined with the limiting purpose to which the land was to be put, we conclude that the Deeds are properly construed as passing only an easement to the railroad, its successors, lessees and assigns and not a fee simple.

■ Next, Timberlake claims that CSX, as Indiana and Michigan Railroad Company's successor, abandoned its operations over the respective strips of land prior to executing the quitclaim deed with O'Brien. As the abandonment of railroad operations extinguishes the easement and permits the titleholder in fee simple to reclaim the easement, Timberlake asserts that CSX, at the time of the quitclaim deed, could not convey anything to O'Brien.[3] *See Brunt Trust,* 458 N.E.2d at 256.

■ Property law in Indiana provides that, upon abandonment by the railroad, a railroad easement terminates and the fee simple interest in the land reverts to the grantor, or the grantor's heirs, assigns or devisees. *Consolidated Rail Corporation, Inc. v. Lewellen,* 682 N.E.2d 779, 782 (Ind. 1997). More precisely, the title of the grantor no longer is subject to the burden of the easement. *Lake County Trust Co.*

---

**3.** In a related argument, Timberlake relies on the Hamilton superior court's declaratory judgment order of November 23, 2006, establishing that Timberlake owned a title to the easement property that was superior to any claims of title by CSX, to bolster its claim that CSX could not convey any interest to O'Brien by quitclaim deed on June 28, 1990. However, we find that the declaratory order is not applicable to the instant proceedings. Specifically, the order clearly states that:

The [c]ourt further declares that it is not within the scope of this Declaratory Judgment to resolve all title disputes between individual persons which may occur as a result of conveyances of portions of the Settlement Corridor prior to the entry of this Judgment or otherwise, and that such disputes, to the extent any have arisen or may arise, must be resolved by the individual parties concerned.

(Appellant's App. p. 31).

*v. Lane,* 478 N.E.2d 684, 688 (Ind.Ct.App. 1985), *reh'g denied, trans. denied; L. & G. Realty & Constr. Co. v. City of Indianapolis,* 127 Ind.App. 315, 139 N.E.2d 580, 588 (1957).

While at common law the question of whether a railroad easement had been abandoned required a finding as to the railroad's intent to abandon, the legislature removed this question from the common law in 1987 by its enactment of Indiana Code section 8–4–65–1 *et seq.,* the Rights–of–Way Act.[4] *See also Calumet Nat'l Bank as Trustee v. Am. Tel. & Tel., a N.Y. Corp.,* 682 N.E.2d 785, 788 (Ind.1997). Ind.Code § 8–4–35–4(a) deemed a railroad right-of-way abandoned if (i) the ICC issues a certificate authorizing abandonment and (ii) the railroad removes the rails, switches, ties, and other facilities from the right-of-way.

Here, Timberlake designated an Abandoned Corridor List which establishes that CSX filed a document with the ICC on July 31, 1988, notifying the ICC of its intent to abandon its Railroad Property in LaPorte County. However, the evidence designated to the trial court does not include any certificate issued by the ICC authorizing this abandonment.[5] Furthermore, the same Abandoned Corridor List indicates that CSX did not remove the tracks on the Railroad Property until July of 1991. Thus, at the time CSX quitclaimed the Railroad Property to O'Brien on June 28, 1990, CSX had not yet statutorily abandoned the property and could convey its interest in the Railroad Property to O'Brien. As such, the trial court properly determined that O'Brien holds an easement for a railroad right-of-way over the Railroad Property.

Although disputed by Timberlake, a non-railroad entity can hold a railroad right-of-way. The statute in force at the time of CSX's conveyance of the Railroad Property to O'Brien, I.C. § 8–4–35–4(c)[6], clearly provides for this eventuality by stating: "Notwithstanding subsections (a) and (b), a railroad right-of-way is not considered abandoned if it is: (1) purchased by a purchaser that is not a railroad; and (2) purchased for use by the purchaser to transport goods or materials even if seller discontinues rail service."

Because an easement is a "right to use or control the land, ..., for a specific limited purpose," O'Brien's use to

---

4. Indiana Code section 8–4–35–1 *et seq.* was added to the Indiana Code by 1987 Ind. Acts 384 § 55. It remained in effect until May 10, 1995, when it was replaced by Ind.Code § 32–5–12–1 *et seq.* This change appears to have been a legislative response to *Penn Centr. Corp. v. U.S. R.R. Vest Corp.,* 955 F.2d 1158 (7th Cir.1992), which held certain provisions of the Rights–of–Way Act unconstitutional for reasons not at issue in this case. *See Calumet Nat'l Bank as Trustee v. Am. Tel. & Tel., a N.Y. Corp.,* 682 N.E.2d 785, 791 n. 3 (Ind.1997). The provisions of the Rights–of–Way Act implicated in this opinion and which were in force at the time of CSX's quitclaim deed to O'Brien, I.C. § 8–4–35–4(a), are substantially the same as the current I.C. § 32–5–12–6(a)(2).

5. In addition to the Abandoned Corridor List, Timberlake designated two publications of the ICC. The first document, filed July 8, 1988, is an abandonment exemption notice referencing interim trail use. The document states in a footnote that "On July 1, 1988, the abandonment exemption under 49 U.S.C. 10505 was published in the federal register. The exemption became effective July 31, 1988." (Appellant's App. p. 311). The second document mentions that the railroad over the Railroad Property had been out of service for at least two years. We do not need to decide whether these documents equate to the statutorily required ICC's "certificate authorizing abandonment" as it is clear that the second requirement mandated by the statute is not satisfied. *See* I.C. § 8–4–34–4(a).

6. Currently I.C. § 32–23–11–8.

transport goods or materials over the Railroad Property is necessarily restricted by the terms of the Deeds. *See* BLACK'S LAW DICTIONARY 548 (8th ed.2004). As such, O'Brien is only allowed to "pass and repass by themselves, their servants, agents and employees with their engines, cars, horses, cattle, carts, wagons and other vehicle, and transport freight and passengers, and do all other things properly connected with or incident to the location, building, maintaining and servicing the [Railroad Property][.]" (Appellant's App. pp. 249, 252, and 255). Granting O'Brien anything more would effectively transform the easement into a fee simple.

Thus, in light of the designated evidence before us, we conclude that CSX conveyed its easement in the Railroad Property to O'Brien by quitclaim deed on June 28, 1990. Because of the Deeds' restrictive language, O'Brien's use of the easement is limited to the purposes set forth in the 1881 Deed documents. Therefore, we affirm the trial court's denial of Timberlake's motion for summary judgment.

### CONCLUSION

Based on the foregoing, we hold that the trial court properly determined that O'Brien holds a railroad right-of-way easement, the usage of which is restricted by the provisions included in the 1881 Deeds.

Affirmed.

DARDEN, J., concurs.

VAIDIK, J., concurs in result without opinion.