**WASTEWATER ONE, LLC and William A. Musselman, Appellants,**

v.

**FLOYD COUNTY BOARD OF ZONING APPEALS and Floyd County, Indiana, Appellees.**

No. 22A04–1007–PL–418.

Court of Appeals of Indiana.

May 24, 2011.

C. Gregory Fifer, Applegate Fifer Pulliam LLC, Jeffersonville, IN, Attorney for Appellants.

Steven A. Gustafson, New Albany, IN, Attorney for Appellees.

## OPINION

BROWN, Judge.

Wastewater One, LLC (the "Utility") and William A. Musselman ("Musselman," and collectively with the Utility, the "Applicants") appeal the Findings of Fact, Conclusions of Law, and Judgment in favor of the Floyd County Board of Zoning Appeals and Floyd County, Indiana (collectively, the "BZA") affirming the BZA's denial of a conditional use permit for the expansion of a sewage treatment plant. The Applicants raise four issues which we revise and restate as:

I. Whether the BZA had jurisdiction over the Utility's proposal to expand the Plant;

II. Whether the requirements of the Floyd County Zoning Ordinance (the "Ordinance") for evaluating conditional use petitions are contrary to Indiana law; and

III. Whether the court erred in affirming the BZA's denial of the conditional use petition.

We affirm.[1]

The relevant facts follow. In 2006, the Utility was approved to purchase a sewage treatment plant known as the Highlander Village Sewage Treatment Plant (the "Plant") that serviced two residential subdivisions in Floyd County, Highlander Vil-

---

1. The BZA also raises the issue in its brief that "[s]ince the Indiana Utility Regulatory Commission has denied the [Applicants'] petition to expand its service area, this appeal is moot." Appellees' Brief at 15. Initially, we note that the BZA's only citation to the record for this proposition is to the BZA's filing dated April 1, 2010, objecting to the Applicants' motion to correct errors. *Id.* at 15. n. 22 (citing Appellants' Appendix at 63). Also, at the hearing before the trial court on November 23, 2009, the Applicants addressed "the matter that was pending before the Regulatory Review Board" and noted that the "initial

proceeding has been dismissed" because "the Office of the Utility Consumer Council objected to the formatting of financial data that was submitted in support of a proposed rate increase" and did not at that proceeding get "into the merits" of the proposed expansion of its territorial authority. Transcript at 5. The Applicants also noted that they had "refiled a petition seeking the same relief...." *Id.*

Based upon our review of the record, as well as recognizing that we affirm the trial court's order on the merits, we decline to address the BZA's mootness argument.

lage and Cedar Pointe, since the 1970s.[2] The Plant was situated on a .324–acre parcel in close proximity to some of the houses in the subdivisions, was located in a "Residential Suburban" zoning district, and treated approximately 37,000 gallons per day servicing 123 customers. Appellants' Appendix at 241. At some point since the Plant was built, Floyd County made changes to its zoning ordinance, and to the extent that the Plant's use or specifications conflict with the current Ordinance, it is considered a grandfathered-in, non-conforming use. The Ordinance lists a sanitary sewage treatment plant as a conditional use "permitted upon conditional approval of the [BZA] in accordance with Article 15 of [the] Ordinance for the Residential Suburban (RS) District." *Id.* at 105.

The Utility entered into an agreement with Musselman, who owned tracts of land in the area, to provide sewage services for a new 129–home subdivision Musselman was developing which would be located adjacent to Cedar Pointe.[3] Musselman also owns a 1.954–acre tract situated adjacent to the Plant, and as part of their agreement he agreed to allow the Plant to build an expansion on this property. The property that the Plant sits on and Musselman's 1.954–acre tract were joined as a single tract when the Plant was initially built.

On June 21, 2007, the Applicants jointly submitted a Conditional Use Application to the BZA to expand the Plant's treatment capacity to 100,000 gallons per day, and on June 25, 2007 they filed a conditional use permit checklist and submission of information as required by the Ordinance. On November 14, 2007, the BZA conducted a public hearing on the application. At the hearing, the Applicants presented facts consistent with the foregoing and that rates were to be increased from $45 to $74 per month due to a $60,000 investment by the Utility to renovate the facility which had fallen into disrepair under previous ownership. The Utility stated that "when this plant goes to a hundred thousand gallons," the sewage flow will be processed faster "and will alleviate those odor conditions that periodically exist[ ] now," and that although incidents of odor would not be eliminated, "it will be less than it is today." *Id.* at 287. The Utility stated that, due to the already-high projected monthly price of $74 per month for sewage services, building another plant at another location "probably isn't financially feasible" because of the new infrastructure that would have to be installed. *Id.* The Utility noted that they were seeking a conditional use permit rather than a variance and thus were "not seeking to do something that your ordinance otherwise prohibits." *Id.* at 288. The Utility also "preemptively object[ed]" to the ballot upon which the BZA would decide the issue if it contained "the five items on the variance requirements in the statute. . . ." *Id.* at 290. The Utility noted that they would not shut down the existing plant until "the new plant was operating properly." *Id.* at 293.

Remonstrators also appeared in opposition to the application. Carol Bedan stated that the Plant is located "fifteen feet

**2.** The record reveals that the Highlander Village Sewage Treatment Plant has been renamed the Galena Wastewater Treatment Plant.

**3.** The Utility was named in the agreement as the "successor in interest to Highlander Village Sewage Treatment Plant, Inc." Appel-

lants' Appendix at 79. At the November 14, 2007 BZA hearing, the Utility's counsel explained that Stephen Tolliver, the owner of the Utility, had operated the plant in some capacity since 1997 but that he "had authority to make capital improvements [since] roughly right at a year ago." *Id.* at 302.

from the back line of ... a couple of [ ] houses," which would not be allowed for new construction under current law, that "there's something to be said about [ ] changing the proximity of houses to sewer plants," and she asked the BZA "to please consider the spirit of the new five-hundred-foot rule." *Id.* at 308–309. Bedan noted that the expansion "is going to result in facilitating more subdivisions" because it will allow "over five hundred new sewer tap-ins...." *Id.* at 309. She noted that "[s]ummertime odor from the plant is going to be tremendous, as it is from other plants in the area." *Id.* She also noted that "[t]he traffic is terrible at rush hour and [ ] bad at many other times," that "[e]very new home results in at least two to three more cars" on the local roadways, and that "two to three hundred more cars ... [is] unacceptable on the present highway." *Id.* at 310–311. George Mouser stated that "there is no way to argue that the use and value of adjacent property will not be adversely affected" and that "[a] young man, not too long ago, went into that area to look at a house that was for sale, and he told me that he saw it was by a sewage treatment plant and he turned around and left promptly." *Id.* at 313. He also noted that just because the Plant had "been in compliance for the last few months [ ] doesn't mean that it will be in compliance after its [sic] expanded" and that, based on past experience, it is difficult to get a sewer back into compliance. *Id.*

At the conclusion of the hearing, one of the BZA members noted that Tolliver revealed in a letter that his "objective was to make this a three hundred thousand gallon plant ultimately when it's completed, not just this one hundred thousand." *Id.* at 322. The BZA voted 4–1 to deny the Applicants' conditional use application and adopted the following findings by use of a conditional use ballot prepared in accor-

dance with Section 15.09(C)(1) of the Ordinance:

> After careful review the Board finds that:
>
> (1) The conditional use WILL NOT be injurious to the public health, safety, moral, and general welfare of the community because: It will provide an essential service to the community.
>
> (2) The use and value of the area adjacent to the property WILL be adversely affected because: Expansion of this capacity within the area now available will impact adjacent residences.
>
> (3) The need for the conditional use DOES NOT result from any conditions, unusual or peculiar to the subject property itself because: This is an expanded use of a public facility.
>
> (4) Strict application of the terms of the Floyd County Zoning Ordinance WILL result in an unnecessary hardship in the use of the property because: It will eliminate necessary facilities for 123 residences.
>
> (5) Approval of the conditional use WILL contradict the goals and objectives of the Floyd County Comprehensive Plan because: This will allow continued service to Highlander Village then seven additional square miles of undeveloped land which will compound present congestion of the roadways.

*Id.* at 279, 323.

On December 11, 2007, the Applicants filed a petition for judicial review by certiorari of denial of conditional use permit and mandate of approval of such permit and complaint for declaratory relief which the trial court granted. On November 23, 2009, the court held a hearing and heard argument by counsel. At the hearing, the

Applicants renewed their argument made at the BZA hearing that the Ordinance is "contrary to Indiana law" because "a conditional use and a variance are two (2) totally different things," but the Ordinance "requires the BZA, when it considers a conditional use permit to apply the standards applicable by statute to a use variance." Transcript at 18. The Applicants also argued that BZA Findings 2 and 5 were not based upon evidence presented at the hearing. The Applicants argued that the BZA did not have jurisdiction "to decide where utility facilities get built," and that Ind.Code § 8–1–2–89(b) does not apply "to an effort to eliminate an existing facility." *Id.* at 26.

On February 22, 2010, the court issued its findings of fact, conclusions of law, and judgment affirming the BZA's denial of the conditional use permit to expand the Plant. The court found in part:

> 22. Prior to or at hearing the applicants submitted evidence to the BZA that reasonably demonstrated compliance with each of the regulatory requirements and/or structural specifications established by Section 10.02 of the [Ordinance], including without limitation, the site plan and supporting documentation referenced above.
>
> 23. The BZA voted to deny the application. . . .
>
> 24. No evidence of probative value was entered of record before the BZA that would reasonably tend to prove that the Utility failed to meet any of the regulatory requirements and/or structural specifications established by the [Ordinance] for the proposed Wastewater Treatment Plant on Musselman's property.
>
> \* \* \* \* \* \*
>
> 28. The findings adopted by the BZA are in accordance with the provisions of Section 15.09 of the [Ordinance]. . . .

> 29. The provisions of Section 15.09 of the [Ordinance] establish a virtually identical evidentiary standard and BZA findings in accordance therewith for the granting of a conditional use, as are required for the granting of a use variance under IC 36–7–4–918.4. . . .
>
> \* \* \* \* \* \*
>
> 34. The Utility was required to comply with Section 10.02 and obtain approval from the BZA under the requirements of Section 15.09 of the [Ordinance] in order to be granted a conditional use permit to construct and operate a wastewater treatment plant on the Musselman property.
>
> 35. As previously found, the Utility has complied with Section 10.02 of the [Ordinance].
>
> 36. With respect to finding No. 2 of the BZA, after a review of the transcript of the hearing it is clear that such finding is clearly erroneous in that the record lacks any facts to support the finding that expansion of the existing plant would adversely impact the use and value of adjacent residences any more than they already are.
>
> 37. With respect to finding No. 5 of the BZA, after a review of the submissions of the Utility and the transcript of the November 14, 2007 hearing, the record supports the finding that approval of the conditional use will contradict the goals and objectives of the Floyd County Comprehensive Plan because this will allow continued service to . . . then seven (7) additional square miles of undeveloped land which will compound present congestion of roadways. The Record discloses the existing plant serves Highlander Village Subdivision and Cedar Pointe Subdivision with approximately 123 existing customers, the undeveloped section of

Cedar Pointe and the development of land presently owned by Mullselman, LLC [sic]. The Utility also intends to file an application with the IURC to expand its CTA to include several sections of the unincorporated territory of Floyd County. In the conditional use review submitted to the BZA and the utility dated October 3, 2007[ ], it was the determination of Don Lopp, the County Planner, that the Utility's proposed conditional use did not meet the spirit or intent of the Floyd County Comprehensive Plan. Mr. Lopp, in his comments to the BZA said the issue was not a matter of upgrading, but expanding, and does the expansion meet the comprehensive plan objectives and goals. The BZA denied the Utility's application in accordance with Section 15.09 of the [Ordinance] as the Utility did not meet its burden to obtain a conditional use permit.

38. The BZA acted within the scope of its authority and its findings, with the exception of finding No. 2, were consistent with the [Ordinance] and Indiana Law when it denied [Applicants'] Application for a conditional Use Permit with regard to the expansion of its existing wastewater treatment plant.

Appellants' Appendix at 13–19 (citations omitted).

On March 23, 2010, the Applicants filed a motion to correct errors. On April 1, 2010, the BZA filed an objection to the motion to correct errors which stated in part that "the issue is mute [sic] since the State has denied [the Utility's] Petition to expand its authority and therefore there is no need for an expansion of the plant since the State has found that the capacity of the current facility is sufficient to serve the customers...." *Id.* at 63. On June 30, 2010, the court denied the Applicants' motion.

I.

We begin with the issue of whether the BZA had jurisdiction over the Utility's proposal to expand the Plant. In reviewing a BZA decision, we are bound by the same standard of review as the trial court. *Holmes v. Bd. of Zoning Appeals of Jasper Cnty.*, 634 N.E.2d 522, 524 (Ind. Ct.App.1994). However, because this issue is a pure question of law, our standard does not require deference to the determinations of the BZA. *Id.* (citing *Town of Beverly Shores v. Bagnall*, 590 N.E.2d 1059, 1061 (Ind.1992)). We will reverse only if an error of law is demonstrated. *Id.* Absent illegality, this court may not substitute its judgment for that of the BZA. *Id.* Because the BZA determined that regulation of the Plant's proposed expansion was within the scope of its authority, we must determine whether the BZA's determination was erroneous.

The Applicants argue that "[a]s a general rule, a local zoning authority lacks jurisdiction over a utility's determination of where to construct its facilities." Appellants' Brief at 24. The Applicants argue that despite Ind.Code § 8–1–2–89(b), "under Indiana law the County and the BZA wholly lacked jurisdiction to limit the repair, improvement, or expansion of a treatment facility once validly constructed." *Id.* at 26. The Applicants argue that "while the BZA and the County may have jurisdiction to dictate or approve where the Utility may initially locate its treatment facilities, they should properly be deemed to wholly lack such jurisdiction with respect to the repair, improvement or expansion of existing facilities...." *Id.* at 27. The Applicants note that the Indiana Supreme Court has held that "a nonconforming use may not be terminated by a new zoning enactment," that such a landowner has a "'vested right' in the use of

the property," and that "because the right was vested, the government could not terminate it without implicating the Due Process or Takings Clauses of the Fifth Amendment. . . ." *Id.* at 26.

The BZA argues that "Ind.Code § 8–1–2–89(b) specifically preserves the authority of the local zoning boards when sewage treatment facilities are involved." Appellees' Brief at 13. The BZA asserts that "[t]he argument that because the current facility predates the current zoning ordinance, this somehow grandfathers in a sewer plant three times its size lacks merit." *Id.* at 14. The BZA argues that "[t]he fact that the Utility currently operates a sewage treatment plant on its .323 acre tract does not grandfather in a new plant on Musselman's entirely different 1.954 acre tract," and that "[t]he refusal of the permit for this expansion for the same reason does not constitute an unconstitutional taking." *Id.* (citation omitted).

■ Ind.Code § 8–1–2–89(b) provides: It is hereby declared to be in the public interest to provide for the orderly development and rendering of sewage disposal service in rural areas within the state of Indiana, and such public interest makes it necessary and desirable that to the extent provided herein the holding of a certificate of territorial authority should be required as a condition precedent to the rendering of such service, and that such operation be under the control, regulation, and supervision of the [Indiana Utility Regulatory Commission], and such sewage disposal companies shall not be subject to regulation by any municipality or county government or metropolitan regulatory body, or any branch or subdivisions thereof or substitute therefor in the form of special service districts, *with the exception that said sewage disposal company shall be subject to the comprehensive plan, zon-*

*ing, and subdivision requirements and regulations of the governmental units having jurisdiction in the area.* However, all functions, powers, and duties of the state department of health and the water pollution control board shall remain unaffected by this section.

(Emphasis added). Indeed, this court in *Holmes* noted that Section 89(b) "expressly subjects companies providing sewage disposal service to local zoning requirements." *Holmes,* 634 N.E.2d at 524.

Moreover, as cited by the BZA the Indiana Supreme Court has held that "[b]ecause nonconforming uses by definition detract from the fulfillment of that purpose, zoning ordinances properly seek to restrain them" and that "Indiana courts have refused to permit the expansion of or changes in nonconforming uses in a variety of factual situations." *Ragucci v. Metro. Dev. Comm'n of Marion Cnty.,* 702 N.E.2d 677, 679 (Ind.1998) (citing *Stuckman v. Kosciusko Cnty. Bd. of Zoning Appeals,* 506 N.E.2d 1079 (Ind.1987) (nonconforming automobile graveyard existing on lots E–K could not be expanded on to lots A–D); *Berkey v. Kosciusko Cnty. Bd. of Zoning Appeals,* 607 N.E.2d 730, 732 (Ind.Ct. App.1993) (nonconforming junkyard could not be expanded beyond the land being so used at the time the restrictive ordinance was adopted), *trans. denied; Metro. Dev. Comm'n v. Goodman,* 588 N.E.2d 1281 (Ind.Ct.App.1992) (nonconforming two-unit carriage house apartment building could not be expanded into three units)).

We therefore conclude that the BZA's determination that it had jurisdiction over the Utility's proposal to expand the Plant was not erroneous.

## II.

■ The second issue is whether the requirements of the Ordinance for evaluat-

ing conditional use petitions are contrary to Indiana law. When asked to interpret an ordinance this court will apply the same principles as those employed for the construction of statutes. *Hendricks Cnty, Bd. of Com'rs v. Rieth–Riley Const. Co., Inc.,* 868 N.E.2d 844, 849 (Ind.Ct.App.2007). A question of statutory interpretation is a matter of law to be determined *de novo* by this court. *Id.*

The Applicants argue that Section 15.09(C)(1) of the Ordinance is "inconsistent with, and violative of, the requirements of Ind.Code § 36–7–4–918.2,"[4] which governs conditional uses, because the Ordinance adopted "the exact same statutory factors as required for the grant of a use variance pursuant to Ind.Code § 36–7–4–918.4,"[5] governing use variances. Appellants' Brief at 19. The Applicants argue that "[i]f a conditional use and a use variance are not the same thing, then how can they permissibly have the same evidentiary threshold requirements." *Id.* at 20. The Applicants argue that "the provisions of Section 15.09(C) of the [ ] Ordinance should be declared as void as the granting of a conditional use permit is mandatory once the applicant demonstrates compliance with the specified conditions established within the zoning ordinance (i.e., the requirements of Section 10.02 . . .)," and they request that we "remand [ ] this matter to the BZA to enter findings limited to the evidence in the record pertaining to the requirements of Section 10.02 of the [ ] Ordinance." *Id.* at 22–24.

The BZA argues that the Applicants' arguments "are based on a single false premise: conditional uses must be automatically granted or denied according to objective criteria. This is not the law. . . ." Appellees' Brief at 7. The BZA argues that Indiana case law establishes that although some zoning ordinances' sections governing conditional uses "are purely 'regulatory' in nature," and would "operate as the [Applicants] would suggest," "other zoning ordinances may give the board of zoning appeals a substantial amount of discretion to determine whether a conditional use should be granted or not." *Id.* at 7–8. The BZA argues that the Ordinance falls into the latter category and "allows the Board to retain substantial discretion over conditional use approvals." *Id.* at 9. The

---

4. Ind.Code § 36–7–4–918.2 provides:
 A board of zoning appeals shall approve or deny all:
 (1) special exceptions;
 (2) special uses;
 (3) contingent uses; and
 (4) conditional uses;
 from the terms of the zoning ordinance, but only in the classes of cases or in the particular situations specified in the zoning ordinance. The board may impose reasonable conditions as a part of its approval.

5. Ind.Code § 36–7–4–918.4 provides:
 A board of zoning appeals shall approve or deny variances of use from the terms of the zoning ordinance. The board may impose reasonable conditions as a part of its approval. A variance may be approved under this section only upon a determination in writing that:

 (1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;
 (2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;
 (3) the need for the variance arises from some condition peculiar to the property involved;
 (4) the strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and
 (5) the approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter.

BZA also argues that "[c]ontrary to the Applicants' suggestion, the requirements specific to waste water treatment plants do not supersede the requirements applicable to all conditional use permits. . . ." *Id.*

Subsection (C) of Section 15.09 initially notes that "[t]he BZA may take action on the [conditional use] petition in accordance [with] IC 36–7–4–918.2 and the Rules of Procedure of the Board of Zoning Appeals." Subparagraph 15.09(C)(1) provides:

> The petition shall be approved if the findings of fact are made consistent with the requirements of this Ordinance and [the] Indiana State Code. Those requirements are stated below.
>
> a. The conditional use will not be injurious to the public health, safety, moral, and general welfare of the community.
>
> b. The use and value of area adjacent to the property will not be adversely affected.
>
> c. The need for the conditional use does not result from any conditions, unusual or peculiar to the subject property itself.
>
> d. The strict application of the terms of the Floyd County Zoning Ordinance would result in an unnecessary hardship in the use of the property.
>
> e. The approval of the conditional use will not contradict the goals and objectives of the Floyd County Comprehensive Plan.

As noted by the parties in their briefs, this court has previously examined other zoning ordinances' provisions governing the approval process for conditional uses. Recently, in *Midwest Minerals, Inc.*

*v. Bd. of Zoning Appeals of the Area Plan Dep't/Comm'n of Vigo Cnty.*, 880 N.E.2d 1264, 1268 (Ind.Ct.App.2008), *reh'g denied, trans. denied,* appellant Midwest similarly argued that "because it presented sufficient evidence to show that it would comply with the three criteria for a special exception, the BZA was required to grant the exception."[6] In responding to Midwest's argument "that the award of a special exception is mandatory upon the applicant's presentation of evidence that its proposed use satisfies the statutory prerequisites set forth in the zoning ordinance," this court cited the following analysis with approval:

> It is often true, as [Midwest] notes, that if a petitioner for a special exception presents sufficient evidence of compliance with relevant statutory requirements, the exception must be granted. However, . . . while some special exception ordinances are regulatory in nature and require an applicant to show compliance with certain regulatory requirements (e.g. structural specifications), providing the zoning board with no discretion, some special exception ordinances provide a zoning board with a discernable amount of discretion (e.g. those which require an applicant to show that its proposed use will not injure the public health, welfare, or morals). *[Midwest's] position that a board of zoning appeals must grant a special exception upon the applicant's submission of substantial evidence of compliance with the relevant criteria is true only as to ordinances falling within the former category.* In other words, when the zoning ordinance provides the board of zoning appeals with a discernable amount of discretion, the board is enti-

---

6. As noted in Ind.Code § 36–7–4–918.2, special exceptions and conditional uses are on equal footing.

tled, and may even be required by the ordinance, to exercise its discretion. When this is the case, the board is entitled to determine whether an applicant has demonstrated that its proposed use will comply with the relevant statutory requirements.

*Id.* (quoting *Crooked Creek Conservation & Gun Club v. Hamilton Cnty. N. Bd. of Zoning Appeals,* 677 N.E.2d 544, 547–548 (Ind.Ct.App.1997) (citations omitted), *reh'g denied, trans. denied* ) (emphasis added). We noted that the provision of the zoning ordinance at issue conferred "upon the BZA a significant amount of discretion" in that it requires an applicant to prove:

a. The proposed use will not be injurious to the public health, safety, comfort, morals, convenience or general welfare of the community;

b. The proposed use will not injure or adversely affect the use or value of other property in the immediate area in a substantially adverse manner; and

c. The proposed use will be consistent with the general character of the zoning district, land uses authorized therein and the Vigo County Comprehensive Plan.

*Id.* at 1268–1269. We held that "the BZA was entitled to determine whether Midwest satisfied the requirements for the grant of a special exception." *Id.* at 1269.

Here, Section 15.09(C)(1) the Ordinance similarly conferred discretion on the BZA which it was required to exercise. *See Crooked Creek,* 677 N.E.2d at 548. Indeed, the two subparts of Section 15.09(C)(1) that the BZA relied upon in denying the Applicants' conditional use permit, subparts (b) and (e), are similarly found in the zoning ordinance at issue in *Midwest Minerals.* Also, we note that the requirements of the zoning ordinance in *Midwest Minerals* are substantially similar to those found in Ind.Code § 36–7–4–918.4. Accordingly, we conclude that Section 15.09(C)(1) of the Ordinance complies with Indiana law.[7]

---

7. The Applicants also cite to *Rieth–Riley,* arguing that this court has invalidated zoning ordinance provisions because they "attempted to [ ] regulate development plan approval where it required the plan commission to evaluate the proposed development's consistency with the 'general welfare of the community and the neighborhood'...." Appellants' Brief at 21. *Rieth–Riley,* however, involved zoning provisions governing the approval of a development plan and notes that the Indiana Code "provides a non-exclusive enumeration of the type of development requirements that 'must be specified....'" 868 N.E.2d at 850. We held that "the particular three factors included" in the zoning ordinance at issue ran contrary to the limitations imposed by the Indiana Code, noting that Ind.Code §§ 36–7–4–1402(b), –1403(a) contain specificity requirements and "must be precise, definite, and certain in expression," and that the three factors were not "sufficiently definite to be understood with reasonable certainty." *Id.* at 852, 853. Here, by contrast, Indiana case law, as cited above, makes clear that the BZA may be granted some discretion in deciding whether to grant a conditional use permit based upon the language of the particular zoning ordinance. We do not find *Rieth–Riley* instructive.

Also, we note that at the November 14, 2007 hearing before the BZA, Don Lopp, the county planner, explained regarding the interplay between Sections 10.02 and 15.09 of the Ordinance that Section 10.02 "goes through the conditional use process for a wastewater treatment plant," while Section 15.09 lists the "[F]indings of fact ... which are the conditional use requirements...." Appellants' Appendix at 319. Also, Attorney Debbie Andry noted that "you've got elements in [Section 10.02] that you need to address" within the ballot based upon Section 15.09. *Id.* at 322. Finally, as discussed in part III, *supra,* the Applicants do not cite to authority stating that Section 10.02 of the Ordinance relieves them of the requirement to show compliance with Section 15.09.

## III.

 The third issue is whether the court erred in affirming the BZA's denial of the conditional use petition. As noted above, a trial court and an appellate court both review the decision of a zoning board with the same standard of review. *St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville–Vanderburgh Cnty.*, 873 N.E.2d 598, 600 (Ind.2007). A proceeding before a trial court or an appellate court is not a trial *de novo;* neither court may substitute its own judgment for or reweigh the evidentiary findings of an administrative agency. *Id. See also Equicor Dev., Inc. v. Westfield–Washington Twp. Plan Comm'n,* 758 N.E.2d 34, 37 (Ind. 2001). A zoning board is "an administrative agency with expertise in zoning matters," and the scope of a court's review is governed by Ind.Code § 4–21.5–5–14. *Scott v. Marshall Cnty. Bd. of Zoning Appeals,* 696 N.E.2d 884, 885 (Ind.Ct.App.1998); *S & S Enterprises, Inc. v. Marion Cnty. Bd. of Zoning Appeals,* 788 N.E.2d 485, 490 (Ind.Ct.App.2003) (citing *Equicor,* 758 N.E.2d at 36), *trans. denied.* Ind.Code § 4–21.5–5–14(d) provides that a court may provide relief only if the agency action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Ind.Code § 4–21.5–5–14(a) further provides that "[t]he burden of demonstrating the invalidity of the agency action is on the party ... asserting invalidity." "Thus, the [Applicants] labor under a heavy burden in urging this Court to overturn the Board's decision." *Scott,* 696 N.E.2d at 885.

The Applicants argue that "the BZA impermissibly attempted to simply adopt [ ] basic findings of fact as set forth at Section 15.09(C), instead of engaging in the detailed analysis of the evidence entered into the administrative record within the context of the requirements of Section 10.02 and Section 15.09(A) as mandated by law." Appellants' Brief at 13. The Applicants argue that there was no evidence presented to the BZA that the proposed expansion did not comply with the requirements of Section 10.02 while asserting that "[t]he testimony of adjacent landowners regarding objections unrelated to establishing whether the application fully complied with these development requirements is wholly irrelevant." *Id.* The Applicants also argue that, regarding BZA Finding 5, "the Floyd County Comprehensive Plan was not entered into the record.... It was therefore erroneous for the BZA and the trial court to base their determination in any manner on matters not contained within the record." *Id.* The Applicants also assert, without citation to authority, that "[t]he review and determination of a conditional use permit is a ministerial act that is substantially akin to the approval of a subdivision plat by a plan commission." *Id.* at 13–14.

Further, regarding the trial court's affirmance of the BZA's decision, the Applicants argue that based upon the court's findings which noted that they complied with Section 10.02 of the Ordinance, "it is inexplicable that judgment could have been rendered ... in favor of the BZA and against the [Applicants]." *Id.* at 16. The Applicants cite to a zoning treatise and argue that "it is virtually impermissible for a board of zoning appeals to deny a conditional use or special exception permit by determination of incompatibility with the comprehensive plan," and that a designation of conditional use implies that it is an acceptable use under the comprehensive plan. *Id.* at 17. The Applicants also as-

sert that "Ind.Code § 36–7–4–918.2 dictates that the zoning ordinance is the sole determinative document regarding conditional use applications, not the comprehensive plan." *Id.* at 18.

The BZA argues that "[i]t was not necessary . . . to introduce the Comprehensive Plan into evidence" because "the 'goals and objectives of the Comprehensive Plan fall within the Board's expertise on zoning matters, and do not require formal proof." Appellees' Brief at 11–12 (citing *Midwest Minerals,* 880 N.E.2d at 1270–1271). The BZA argues that its decision "is well supported by the record evidence," noting that the Plant's expanded capacity would almost triple and would possibly lead to "a large, unplanned, sprawling subdivision being constructed in the area" which has "been historically problematic in Floyd County[ ] and is the sort of matter that falls squarely within the Board's expertise in planning and zoning matters."[8] *Id.* at 12.

■ This court has previously recited the test for determining whether a zoning board abused its discretion in rendering findings of fact as required by Ind.Code § 36–7–4–915:

> A zoning board abuses its discretion when it makes findings that have no evidentiary support. *Boffo* [*v. Boone Cnty. Bd. of Zoning Appeals,* 421 N.E.2d 1119, 1125 (Ind.Ct.App.1981)]. Moreover, the findings must be tailored to address the specific facts presented to the Board. *Metropolitan Bd. of Zoning Appeals, Div. II, Marion County v. Gunn,* 477 N.E.2d 289, 300 (Ind.Ct.App. 1985). "These basic findings of fact are not sufficient to support the Board's ultimate findings if they are merely a gen-

eral replication of the requirements of the ordinance at issue." *Id.* Thus, "[w]e have held that this duty includes a requirement that a BZA enter both specific findings of fact and ultimate findings, or determinations." *Town of Merrillville* [*Bd. ·of Zoning Appeals v. Pub. Storage, Inc.,* 568 N.E.2d 1092, 1095 (Ind.Ct.App.1991), *trans. denied* ]. Specific findings necessarily incorporate the basic facts upon which the determination is based. *Id.*

*Network Towers, LLC v. Bd. of Zoning Appeals of LaPorte Cnty.,* 770 N.E.2d 837, 844 (Ind.Ct.App.2002).

■ Also, we have noted that the "burden of demonstrating satisfaction of the relevant statutory criteria rests with the applicant." *Crooked Creek,* 677 N.E.2d at 548. In *Crooked Creek,* we explained that:

> Neither those opposed to Crooked Creek's application, nor the BZA, were required to negate Crooked Creek's case. . . . [A] board of zoning appeals may deny an application for a special exception on the grounds that an applicant has failed to carry its burden of proving compliance with the relevant statutory criteria regardless of whether remonstrators present evidence to negate the existence of the enumerated factors.

*Id.* We have also stated that where a zoning board denies a conditional use application, "[w]hile there need not be a preponderance of the evidence supporting the Board's decision, there must be at least a scintilla of evidence. . . ." *Network Towers,* 770 N.E.2d at 845 (citing *id.*).

8. The BZA also argues to the extent this court determines that the BZA's findings are inadequate, "the remedy would appear to be to remand these proceedings to the Board itself to make more comprehensive findings. . . ." Appellees' Brief at 10–11 (citing *Pack v. Ind. Family & Soc. Serv. Admin.,* 940 N.E.2d 369 (Ind.Ct.App.2011); *Holmes,* 634 N.E.2d 522).

We turn first to the Applicants' arguments concerning Section 10.02 of the Ordinance. The Applicants' basic assertion is that the BZA's findings of fact were deficient because they do not discuss the requirements of Section 10.02. Section 10.02 sets forth technical, regulatory requirements which developers of a wastewater treatment plant must adhere to and provides:

In considering an application for a Conditional Use for the location of a Wastewater Treatment Plant, the Plan Commission shall consider and be guided by the following:

A. The safe and sanitary collection, treatment, and disposal of sewage, as by a properly designed, constructed, and maintained Sewage Treatment Plant of appropriate size, in a manner so as not to pollute the ground, air, or water. . . .

B. A proposed plant having the minimum capacity specified by this ordinance; which is designed so as to be expanded as herein provided; and, which is to be located not closer than ½ mile to an existing wastewater treatment plant . . . is deemed to satisfy this guideline. . . .

C. Determination: In determining whether to approve or disapprove an application for a conditional use permit for a wastewater treatment plant, the Board shall be governed by the following:

1. The capacity of the proposed Plant shall not be less than 40,000 gallons per day, and the tract upon which the treatment plant is to be located shall be of sufficient size to permit reasonable expansion of the facility and the replacement of same . . . without interrupting operations. Unless otherwise demonstrated by the applicant, it shall be presumed that the capacity of the plant and its footprint shall be increased to a minimum 100,000 gallon per day capacity. . . .

2. If a proposed Plant has an initial planned capacity of 100,000 gallons per day or more, the Plant shall have the capacity to expand by 100 percent from the initial planned capacity.

D. The applicant shall file with the [BZA] a site/development plan disclosing the location of the following:

1. The Expanded Plant and all associated structures and improvements on the tract with setback from the front, rear, and side lines of not less than 50 feet, utility services and easement, and the entrance to the tract and the access roadway. This plan shall be accompanied by a narrative describing each structure to be located on the tract and its function. . . .

2. To the extent practicable, the Plant shall be located and/or adequately screened so as not to be visible from any public street or way, lots in the subdivision to be served or occupied structures on adjoining property. . . .

3. The Plant and related equipment shall be fenced to prevent unauthorized access. . . .

E. In addition to the requirements of this Section and those conditions which may be imposed by the [BZA], the approval of a permit hereunder shall be further conditioned upon the requirement that the plant and all related structures and equipment shall be constructed and installed in accordance with the plans and specifications approved by those governmental entities having jurisdiction, and that the appli-

cant shall have and/or acquire all ... permits ... authorizing and permitting the construction....

F. If it is the intent of the Company to provide Services to a proposed or existing subdivision, the conclusion of a sewage disposal agreement ... shall be a condition of a permit approved....

 Here, the Applicants do not cite to authority demonstrating that Section 10.02, which lists technical requirements the Plan Commission should be guided by in considering the location of a wastewater treatment plant, supplants Section 15.09(C)(1), which states that the BZA shall approve a conditional use petition "if the findings of fact are made consistent with" its five requirements. The BZA entered findings of fact, stated above, on a conditional use ballot written in accordance with Section 15.09(C)(1) of the Ordinance. For each subpart of Section 15.09(C)(1), the ballot contained an ultimate finding of whether that requirement was satisfied by the evidence presented and allowed the BZA to enter specific findings in support. Indeed, under each subpart, following the word "because," the BZA entered specific findings explaining its reasons for entering the findings of fact as it did. We therefore cannot say that the BZA's findings were insufficient.

Next, we address the Applicants' arguments concerning Finding 5, upon which the trial court based its affirmance of the BZA's decision. As noted above, the BZA denied the conditional use permit based upon subparts (2) and (5) and the trial court affirmed the BZA's decision based upon subpart (5) only.[9] Again, BZA Finding 5 stated that "[a]pproval of the condi-

tional use WILL contradict the goals and objectives of the Floyd County Comprehensive Plan because: This will allow continued service to Highlander Village[,] then seven additional square miles of undeveloped land which will compound present congestion of the roadways." Appellants' Appendix at 279. In the trial court's order affirming the BZA's decision, the court stated in Finding 37:

With respect to finding No. 5 of the BZA, after a review of the submissions of the Utility and the transcript of the November 14, 2007 hearing, the record supports the finding that approval of the conditional use will contradict the goals and objectives of the Floyd County Comprehensive Plan.... The Record discloses the existing plant serves Highlander Village Subdivision and Cedar Pointe Subdivision with approximately 123 existing customers, the undeveloped section of Cedar Pointe and the development of land presently owned by Mullselman, LLC [sic]. The Utility also intends to file an application with the IURC to expand its CTA to include several sections of the unincorporated territory of Floyd County. In the conditional use review submitted to the BZA and the utility dated October 3, 2007[ ], it was the determination of Don Lopp, the County Planner, that the Utility's proposed conditional use did not meet the spirit or intent of the Floyd County Comprehensive Plan. Mr. Lopp, in his comments to the BZA said the issue was not a matter of upgrading, but expanding, and does the expansion meet the comprehensive plan objectives and goals. The BZA denied the Utility's application in accordance with Section 15.09 of the

9. The court found in its order that Finding 2, based upon subpart (2) of Section 15.09(C), "is clearly erroneous in that the record lacks any facts to support the finding that expan-

sion of the existing plant would adversely impact the use and value of adjacent residences any more than they already are." Appellants' Appendix at 18.

[Ordinance] as the Utility did not meet its burden to obtain a conditional use permit.

*Id.* at 18–19.

The Applicants contend that Finding 5 is erroneous because the Floyd County Comprehensive Plan was not entered into the record and was therefore not based upon record evidence. The BZA cites our holding in *Midwest Minerals* for the assertion that it was not required to enter the Comprehensive Plan into evidence. Keeping in mind our previous statements squarely placing the burden to affirmatively prove compliance with the applicable criteria on the applicant, we note that Section 1.02 of the Ordinance, contained in the record, is titled "Purpose" and states: "This Ordinance is a tool for Floyd County to guide and manage growth and development in accordance with [the] vision of the Floyd County Comprehensive Plan." *Id.* at 103. Among the purposes of the Ordinance listed is "[t]o lessen or avoid congestion on public ways...." *Id.* Thus, the record indicates that the Floyd County Comprehensive Plan contemplates the lessening or avoiding of traffic congestion as an important goal or objective.

Finally, having determined that compounding the present congestion on the roadways was a valid consideration in accordance with the goals and objectives of the Comprehensive Plan, we note that one remonstrator appearing at the November 14, 2007 hearing stated that "[t]he traffic is terrible at rush hour and [ ] bad at many other times," that "[e]very new home results in at least two to three more cars" on the local roadways, and that "two to three hundred more cars ... [is] unacceptable on the present highway." *Id.* at 310–311. Also, at the conclusion of the hearing, one of the BZA members noted that Tolliver revealed in a letter that his "objective was to make this a three hundred thousand gallon plant ultimately when it's completed, not just this one hundred thousand," indicating that the Utility envisioned expanding the Plant's capacity to eight times its current level. *Id.* at 322. Accordingly, we conclude that the trial court did not err in affirming the BZA's denial of the Applicants' conditional use application.[10]

For the foregoing reasons, we affirm the trial court's findings of fact, conclusions of law, and judgment affirming the BZA's denial of the Applicants' conditional use application.

Affirmed.

ROBB, C.J., and RILEY, J., concur.

---

**10.** Because we affirm based upon Finding 5 we do not address Finding 2.